# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHARD CHARLES BERNIER, III; NADEZHDA USTINENKOV,**<br><br>Plaintiffs,<br><br>v.<br><br>**CALIFORNIA HIGHWAY PATROL OFFICER MICHAEL WALKER,** *et al.***,**<br><br>**Defendants.** | 1:18-cv-01131-LJO-SKO<br><br>**MEMORANDUM DECISION AND ORDER RE MOTION TO STAY (ECF NO. 17)** |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. **<u>INTRODUCTION</u>**

This case concerns events stemming from the arrest and detention of Plaintiff Richard Bernier, III ("Bernier") on or about the evening of November 7 and early morning of November 8, 2017. *See generally*, First Amended Complaint ("FAC"), ECF No. 10. The FAC alleges two federal causes of action arising under 42 U.S.C. § 1983 ("Section 1983"), namely, that Bernier was the victim of excessive force at the hands of several law enforcement officers that evening, resulting in serious injuries to Bernier; and that Bernier is presently being subjected to retaliatory prosecution for threatening to and then filing a lawsuit based upon the November 7-8, 2017 incident. *Id*. ¶¶ 23-31. The FAC also alleges a cause of action under California's Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1; state law causes of action for battery and negligence; and a loss of consortium claim brought by Bernier's wife, Plaintiff Nadezhda Ustinenkov. *Id*. ¶¶ 32-48. Plaintiffs seek damages and injunctive relief to prevent the retaliatory prosecution and to expunge any records pertaining to that prosecution. *Id*. at 10. The FAC names as Defendants California Highway Patrol ("CHP") Officers Michael Walker, Pablo Lopez, Corde Spencer, and William Avila; unknown additional CHP officers; unknown Fresno County Sheriff's Department Deputies; other unknown law enforcement officers; and the County of Fresno ("County"). *Id*. ¶¶ 6-8.

Before the Court for decision is a motion to stay filed by Defendants Walker, Lopez, and Spencer ("Moving Defendants") based in part on the fact that the County criminally charged Bernier with fleeing a peace officer, hit and run, resisting, delaying or obstructing a peace officer, and driving

under the influence in connection with the November 7-8 incident. *See People of the State of California v. Richard Charles Bernier*, Case No. F18900078; *see also* ECF No. 17-1. The criminal case remains pending. The County joins the motion to stay. ECF No. 18. Plaintiffs oppose any stay of this case. ECF Nos. 21 & 23. Moving Defendants replied, ECF No. 26, which the County joined. ECF No. 27. The matter was taken under submission on the papers pursuant to Local Rule 230(g). Having considered the parties' arguments in light of the entire record and for the reasons set forth below, the Court dismisses pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), the claims for injunctive relief, and grants in part the motion to stay as to the remaining claims.

### III. FACTUAL ALLEGATIONS

Plaintiffs alleges that on the evening of November 7 and/or the morning of November 8, 2017, Bernier was driving home from a friend's house when, at some point, he realized he was being pursued by law enforcement patrol vehicles. FAC ¶ 9. Bernier then proceeded to his home, where he exited his vehicle and "jogged" toward his front door. *Id*. ¶¶ 9-10. At that point, one of the pursuing patrol cars drove onto the lawn of an adjacent property and ran over Bernier's left leg, breaking Bernier's foot and pinning him under the vehicle. *Id*. ¶ 10. Then, according to Plaintiffs, while Bernier was unable to stand up and "was not a threat to any officer as he writhed in pain," some of the individual officers handcuffed Bernier's hands behind his back. *Id*. at ¶ 11. Thereafter, even though Bernier alleges he was lying on the ground and not resisting, some officers took out their batons and began beating Bernier on the head, face, and body, while others used their bare fists and kicked him. *Id*. at ¶¶ 11-12. Bernier then lost consciousness. *Id*. ¶ 12.

Bernier was then transported to a hospital. *Id*. ¶ 14. At some point, Bernier protested and criticized the defendant officers' actions. *Id*. Thereafter, Plaintiffs allege certain officers interfered with him receiving necessary medical treatment so he could be "rushed to jail," in part to prevent documentation of the full extent of his injuries. *Id*. It is further alleged that certain officers made sadistic comments about beating Bernier. *Id*. ¶ 15. Plaintiffs also allege that, despite his injuries, Bernier was

3

inappropriately sent to one of the regular inmate areas at the Fresno County Jail, where he feared defendant officers would permit or encourage other inmates to assault him so as to conceal their excessive force, all of which Bernier also interpreted as retaliation for his criticism of the defendants. *Id*.¶ 16. Within several hours, Bernier made bail and was released. *Id*. ¶ 14. He then was admitted to the hospital for several days "due to the severity of his injuries." *Id*. ¶ 17.

In early December 2017, Bernier received a notice that the District Attorney declined to prosecute him. *Id*. ¶ 18. Soon thereafter, in December 2017, Bernier, through counsel, sent a preservation request letter to the Fresno County Sheriff's Department, disclosing that Bernier would be making a claim based upon the November 7-8, 2017 incident. *Id*. ¶ 19. On January 8, 2018, the District Attorney "reconsidered" and filed charges against Bernier. *Id*. ¶ 20.

## IV. DISCUSSION

**A.     *Younger* Abstention As Applied to the Requests for Injunctive Relief**

At the outset, the Court concludes that it must dismiss pursuant to the *Younger* abstention doctrine Plaintiffs' requests for injunctive relief against the pending state criminal proceeding. "In *Younger*, the Supreme Court first articulated the principle that a federal court should not interfere with an ongoing state criminal prosecution. The Court based its holding on two grounds: first, the general reluctance of equity courts to disrupt criminal proceedings, and second, notions of federal-state comity expressed as 'Our Federalism.'" *Goldie's Bookstore, Inc. v. Superior Court of State of Cal*., 739 F.2d 466, 469 (9th Cir. 1984) (internal citation omitted). *Younger* abstention is premised upon "a strong policy of avoiding federal interference in pending state proceedings enforcing state public policy." *Gartrell Const. Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991). A federal court "must abstain under *Younger* if four requirements are met: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, *i.e.*, would interfere with the state proceeding in a way that

*Younger* disapproves." *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008).

However, *Younger* leaves "room for federal injunctive intervention in a pending state court prosecution in certain exceptional circumstances—where irreparable injury is 'both great and immediate,' where the state law is 'flagrantly and patently violative of express constitutional prohibitions,' or where there is a showing of 'bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." *Mitchum v. Foster*, 407 U.S. 225, 230 (1972) (internal citations omitted); *see also Perez v. Ledesma*, 401 U.S. 82, 85 (1971) ("Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate."). "Federal courts have construed the bad-faith exception very narrowly, applying it when the state brings repeated charges solely for the purpose of harassment without the reasonable expectation of conviction, and where systematic deprivations of [a plaintiff's] rights to raise Constitutional claims in state court have occurred due to judicial bias." *Dilworth v. City of Everett*, No. C14-1434 MJP, 2014 WL 6471780, at *2-3 (W.D. Wash. Nov. 17, 2014) (internal quotation omitted).

The basic elements required for *Younger* abstention are present here. Plaintiffs admit there is an ongoing state judicial proceeding, FAC ¶ 20, a proceeding that implicates California's established interest in prosecuting its criminal laws. *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986) ("the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief"). There is no suggestion Bernier will be unable to raise his constitutional claims in state court due to judicial bias, and the injunctive relief requested in this matter (an injunction against the "retaliatory prosecution") will interfere directly with the ongoing state proceeding.

Likewise, there is no basis for application of any of the exceptions to *Younger* abstention. There

is no allegation that repeated charges have been brought solely to harass or that the charges are being pursued without the reasonable expectation of conviction, nor is there any suggestion of systemic judicial bias depriving Bernier of his right to raise Constitutional claims in state court. Therefore, this Court must abstain from exercising jurisdiction over the requests for injunctive relief and those claims are DISMISSED. This dismissal is without leave to amend, as the Court can fathom no plausible path to stating a non-futile injunctive relief claim under the circumstances.

**B.     Remaining Federal Claims**

The remaining federal claims focus on various aspects of the November 7-8, 2017 incident. The first cause of action alleges that defendants used excessive and unreasonable force against Bernier when (1) one of the defendant officer's patrol vehicles ran over Bernier's leg, breaking his foot; and (2) Bernier was beaten severely and to the point of unconsciousness during the incident. FAC ¶ 24. The second cause of action alleges that defendants retaliated against Bernier in violation of his First Amendment rights to "deter him from taking appropriate legal action against them, . . . for criticizing them and protesting their wrongdoing while he was at the hospital and the jail, and also in the aftermath of his informing the Fresno Sheriff's Department that he would be taking legal action." *Id*. ¶ 28. The retaliation against Bernier allegedly took the form of:

> (1) denying Bernier timely and necessary medical care, both at the hospital and the jail, on November 8, 2017, in the immediate aftermath of his criticism and complaint about the individual defendants' misconduct and also in an effort to prevent, deter and intimidate him from taking legal action; (2) assigning Bernier to general population on November 8, 2017, despite his injures, in the immediate aftermath of his criticism and complaint about the individual defendants' misconduct and also in an effort to prevent, deter and intimidate him from taking legal action; and (3) recommending the filing of criminal charges against Bernier after he made it known that he was going to take legal action, even though it had previously been decided that no charges would be filed against him.

*Id*.

The first issue is whether, in light of *Heck v. Humphrey*, 512 U.S. 477 (1994), any or all of these claims should be stayed until the completion of the state criminal proceedings. A recent decision out of

6

this district summarizes succinctly the approach to *Heck* required under the present circumstances:

> In *Heck* [], 512 U.S. 477 [], the United States Supreme Court held that "to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 487. Absent an intervening decision that renders a conviction ineffectual, *Heck* requires courts to dismiss a Section 1983 action if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id*. (emphasis added).
>
> The United States Supreme Court has held that *Heck* "is called into play only when there exists 'a conviction or sentence that has not been . . . invalidated,' that is to say, an 'outstanding criminal judgment.' " *Wallace v. Kato*, 549 U.S. 384, 393 (2007). <u>*Heck* does not require dismissal of claims that would "impugn an anticipated future conviction</u>." *Id*.; *see also Hopkins v. Contra Costa Cty. Sheriff Dep't*, No. C 12–0415 LHK (PR), 2012 WL 2063112, at *2 (N.D. Cal. June 7, 2012) ("*Heck* does not apply if plaintiff has only been arrested or charged, not convicted."). The *Wallace* court held that such a rule would require "the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict . . . all this at a time when it can hardly be known what evidence the prosecution has in its possession." *Wallace*, 549 U.S. at 393.
>
> However, the <u>*Wallace* court also held that "[i]f a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.</u>" *Id*. at 393–94. *See also Peyton v. Burdick*, 358 Fed. Appx. 961 (9th Cir. 2009) (staying case where the Section 1983 claims "implicate rulings that are likely to be made in the pending state court criminal proceeding"). Because the question of whether a Section 1983 action is barred by *Heck* is more difficult to answer where the plaintiff is facing charges of resisting arrest or similar conduct arising from the same incident he is claiming excessive force, or if the plaintiff is alleging false arrest or a similar claim, a stay may be appropriate until such time as the underlying criminal proceedings are concluded, at which time the court would be in a better position to evaluate whether the Section 1983 action would impugn any conviction resulting therefrom. *See Wallace*, 549 U.S. at 393-94. "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will

proceed, absent some other bar to suit." *Id*. at 393 (citation omitted).

*Nuno v. Reyes*, No. 1:18-CV-0263-DAD-SKO, 2018 WL 1795982, at *4-5 (E.D. Cal. Apr. 16, 2018).

This reasoning, which the undersigned adopts in full, applies with equal force to most of the remaining federal claims in this case, specifically, the entirety of Plaintiffs' excessive force claim and any claims concerning retaliatory prosecution. It would be difficult, if not impossible, to determine whether and to what extent Plaintiffs' excessive force claim is barred by *Heck* until the criminal proceeding concludes. Even adopting Plaintiffs position, articulated in their supplemental opposition, ECF No. 23, that Bernier stopped resisting arrest at some point during the November 7-8 incident yet the use of force continued in excess, it is still possible that some aspect of Plaintiffs' excessive force claim would be barred or narrowed by a criminal conviction. Likewise, Plaintiffs' claim of retaliatory prosecution will turn, at least in part, on whether there was an absence of probable cause to bring the charges, *see Hartman v. Moore*, 547 U.S. 250, 265 (2006), which also may be barred by *Heck*, depending on the outcome of the criminal proceeding. Accordingly, the request for a stay is GRANTED as to the entire excessive force claim and the retaliatory prosecution aspects of the First Amendment retaliation claim with one narrow exception explained below.

One important aspect of *Heck* is that where a conviction or sentence has been imposed and has not been invalidated, the statute of limitations for any claim that necessarily would call the conviction or sentence into question does not begin to run until the conviction or sentence is set aside. *Heck*, 512 U.S. at 489. However, the Supreme Court held in *Wallace* that this deferred accrual rule does not apply to claims that <u>*might*</u> "impugn an *anticipated future conviction*," in part because it is impossible to determine in the abstract whether the civil claim would impugn that entirely speculative verdict/sentence. 549 U.S. at 393 (emphasis in original). The Supreme Court explained in *Wallace* that the answer to this problem is for a plaintiff to file their civil claim and for the federal court to stay the civil claim until potentially conflicting criminal proceedings are complete. *Id*. at 393-94.

Plaintiffs suggest that they are still in the process of identifying additional defendants that need

8

to be added to the case. If that process is stayed, those potential claims may be subject to dismissal on statute of limitations grounds. ECF No. 21 at 8. The Court agrees with Plaintiffs on this point. It would be highly prejudicial to Plaintiffs to preclude them from amending their complaint to add new defendants, so the stay of the excessive force and retaliatory prosecution claims shall not bar Plaintiffs from doing so.[1] However, Plaintiffs also suggest that they need to engage in civil discovery to uncover the identity of relevant officers. On this point, the Court does not agree. Plaintiffs concede that they have received relevant police reports and that these reports have helped them focus on the proper defendants connected to the excessive force allegations. ECF No. 21 at 6. Plaintiffs have failed to demonstrate that they will be unable to discover what they need in connection with naming defendants in the excessive force and retaliatory prosecution claims through the criminal discovery process. Accordingly, the stay of these claims extends to discovery as to those claims.

The Court next turns to the remaining aspects of Plaintiffs' First Amendment retaliation claim. These do not appear to be tethered in any way to the underlying state criminal action. As mentioned, the FAC alleges certain defendants denied Bernier timely and necessary medical care, both at the hospital and the jail, in the immediate aftermath of his criticism and complaint about misconduct and to prevent, deter, and intimidate him from taking legal action. The FAC also alleges that Bernier improperly was assigned to a general population housing area in the Fresno County jail, despite his injuries, also in an effort to prevent, deter, and intimidate him from taking legal action. Plaintiffs' success in this case on any of these claims would not necessarily imply the invalidity of any future conviction in the underlying state criminal action. Accordingly, because *Heck* would not be triggered under any scenario regarding

---

[1] The Court does not believe that California Government Code § 945.3 warrants a different outcome. That provision states that "[n]o person charged by indictment, information, complaint, or other accusatory pleading charging a criminal offense may bring a civil action . . . while the charges against the accused are pending before a justice, municipal, or superior court." Cal. Gov't Code § 945.3 ("Section 945.3"). While state law determines the statute of limitations for Section 1983 suits, *Cabrera v. City of Huntington*, 159 F.3d 374, 379 (9th Cir. 1998), thereby making Section 945.3 relevant, Section 1983 tolling under Section 945.3 in turn pivots around whether a civil claim would impugn the result of a state criminal proceeding under *Heck*. *See Cabrera,* 159 F.3d at 380-81. This, in turn, implicates *Wallace's* suggestion that the most appropriate approach is to allow a plaintiff to file their Section 1983 claim and then stay it.

the criminal action, *Heck* does not provide a basis for imposing a stay as to those allegations.

With respect to the remaining aspects of the First Amendment claim, Moving Defendants alternatively suggest that a stay is appropriate for purposes of judicial efficiency pursuant to *Landis v. North American Co.*, 299 U.S. 248 (1936). United States district courts have inherent authority to stay proceedings, for the power to stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* at 254; *accord Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). This is true even if the issues in such proceedings are not necessarily controlling with respect to the action before the court. *Id.* In exercising its discretion, a court must evaluate the competing interests affected by either granting or refusing a stay, including "the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted). Put another way, "[i]n determining whether to stay proceedings, the Court considers the following factors: (1) judicial economy; (2) the moving party's hardship; and (3) potential prejudice to the non-moving party." *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1057 (S.D. Cal. 2007). A court must "balance the length of the stay against the strength of the justification given for it." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000). "If a stay is especially long or its term is indefinite," a court should "require a greater showing to justify it." *Id.*

Critically, the party proposing a stay bears the burden of proving a stay is warranted under the discretionary *Landis* factors. *Clinton*, 520 U.S. at 708. The Court finds that Moving Defendants have

failed to meet this burden in connection with the remaining First Amendment retaliation claims. They have made no showing of hardship, particularly in light of Plaintiffs' asserted interest in expeditious resolution of his claims. Likewise, although Defendants correctly point out that this Court is extraordinarily busy, that, standing alone, is not a justification for staying a civil claim. Accordingly, the request for a stay is DENIED as to Plaintiffs' First Amendment retaliation claims premised on failure to provide appropriate medical care and/or prison housing.

**C.     State Claims**

As mentioned, the FAC also alleges a cause of action under California's Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1; state law causes of action for battery and negligence; and a loss of consortium claim brought by Bernier's wife. *Id*. ¶¶ 32-48. For the most part, these claims parallel and incorporate by reference the federal claims. The Court sees no reason that its findings regarding the stay would not apply with equal force to any parallel aspect of the state law claims. The request for a stay is GRANTED as to state law claims premised upon excessive force or retaliatory prosecution, with the exception that Plaintiffs may amend those claims to add new defendants.[2] To the extent the claims are premised upon the other allegations of retaliation (failure to provide medical care and/or inappropriate jail housing), the request for a stay is DENIED.

## V. CONCLUSION AND ORDER

For the reasons set forth above:

(1) Plaintiffs' requests for injunctive relief are DISMISSED in light of *Younger*;

(2) The request for a stay is GRANTED IN PART AND DENIED IN PART:

  (a) the case is STAYED as to federal and state law claims premised upon excessive force or retaliatory prosecution, with the exception that Plaintiffs may amend those claims to

---

[2] Even if the reasoning set forth above, *supra* note 1, regarding the implications of Section 945.3 tolling for Section 1983 claims does not apply directly to the state law claims, there is no point to allowing Plaintiffs to amend their Section 1983 claims while precluding them from amending related state law claims. Accordingly, Plaintiffs may amend their state law claims of excessive force and retaliatory prosecution despite the stay.

11

add new defendants;

(b) the case may proceed as to the other allegations of retaliation (failure to provide medical care and/or inappropriate jail housing).

IT IS SO ORDERED.

Dated: **March 13, 2019** /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE