UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD CHARLES BERNIER, III; NADEZHDA USTINENKOV,

Plaintiffs,

v.

CALIFORNIA HIGHWAY PATROLOFFICER MICHAEL WALKER, et al,

Defendants.

No. 1:18-cv-01131-NONE-SKO

MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE AND DISMISS

(Doc. No. 45)

**Thirty (30) Day Deadline**

**INTRODUCTION**

This case concerns events stemming from the arrest and detention of plaintiff Richard Bernier, III ("Bernier") on or about the evening of November 7 and early morning of November 8, 2017. (*See generally* Doc. No. 42, Second Amended Complaint (SAC).) The operative SAC alleges federal causes of action arising under 42 U.S.C. § 1983 (Section 1983), namely, that Bernier was the victim of excessive use of force at the hands of several law enforcement officers that evening, resulting in serious injuries to Bernier; that Bernier was subjected to various forms of retaliation for complaining about his treatment during and after the incident; and that Bernier presently is being subjected to retaliatory prosecution for threatening to and then filing a lawsuit based upon the incident. (*Id.* ¶¶ 25–34.) The SAC also alleges a cause of action under California's Tom Bane Civil Rights Act, California Civil Code § 52.1; state law causes of action

for battery and negligence; and a loss of consortium claim brought by Bernier's wife, plaintiff Nadezhda Ustinenkov. (*Id*. ¶¶ 35–48.) The SAC seeks damages as well as injunctive relief to prevent the retaliatory prosecution and to expunge any records pertaining to that prosecution. (*Id*. at 11.) The SAC names as defendants Fresno Police Officers Anthony Rodriguez and Kevin Jones and Fresno County Sheriff's Deputies Garrett Majors, John Robinson and Nathaniel Wilkinson. (*Id*. ¶¶ 6–7.) The City of Fresno and the County of Fresno are also named as defendants. (*Id*. at ¶¶ 9–10.)

Plaintiffs filed this lawsuit on August 20, 2018 (Doc. No 1), followed by a first amended complaint (FAC) filed on December 2, 2018 (Doc. No. 10). Criminal charges against Bernier remain pending in state court in *People of the State of California v. Richard Charles Bernier*, Case No. F18900078. In January 2019, defendants moved to stay this case pending resolution of the state criminal action. (Doc. Nos. 17-1, 18.) In a March 14, 2019 order, the previously assigned district judge dismissed plaintiffs' claims for injunctive relief pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and granted in part the motion to stay as to the remaining claims. (Doc. No. 30.)

Of note with respect to those remaining claims, the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), requires dismissal of a Section 1983 action if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id*. at 487. But, *Heck* "is called into play only when there exists 'a conviction or sentence that has not been . . . invalidated,' that is to say, an 'outstanding criminal judgment.' " *Wallace v. Kato*, 549 U.S. 384, 393 (2007). *Heck* does not require dismissal of claims that would "impugn an anticipated future conviction." *Id*. Therefore, because the criminal case against Bernier remains pending in state court, this court stayed any Section 1983 claims that might implicate rulings that are likely to be made in that pending state court criminal prosecution. (Doc. No. 30 at 6–8.) (citing *Nuno v. Reyes*, No. 1:18-CV-0263-DAD-SKO, 2018 WL 1795982, at *4-5 (E.D. Cal. Apr. 16, 2018) ("Because the question of whether a Section 1983 action is barred by *Heck* is more difficult to answer where the plaintiff is facing charges of resisting arrest or similar conduct arising from the same incident he is claiming excessive force, or if the plaintiff is alleging false

arrest or a similar claim, a stay may be appropriate until such time as the underlying criminal proceedings are concluded, at which time the court would be in a better position to evaluate whether the Section 1983 action would impugn any conviction resulting therefrom.”).) Accordingly, the court stayed plaintiff’s entire excessive force claim and the retaliatory prosecution aspects of the First Amendment retaliation claim, with one exception: Because it was not possible to tell with certainty whether *Heck* would be implicated, it was likewise impossible to know in advance whether the statute of limitations would be subject to deferred accrual. Therefore, as explained in *Wallace*, 549 U.S. at 393–94, a plaintiff wishing to avoid any possible limitations bar should file his or her civil claim, which the federal court should then stay until potentially conflicting criminal proceedings are complete. However, plaintiffs indicated they were in the process of identifying additional defendants that needed to be added to this case before the statute of limitations expired. The court agreed that plaintiffs should be permitted to amend the complaint to add new defendants.[1] (*See* Doc. No. 30 at 9 (“It would be highly prejudicial to Plaintiffs to preclude them from amending their complaint to add new defendants, so the stay of the excessive force and retaliatory prosecution claims shall not bar Plaintiffs from doing so.”).)

In keeping with the court’s order, plaintiffs filed the SAC on November 6, 2019. (Doc. No. 42.) Now before the court for decision is the County’s motion to strike the SAC or, in the alternative, to dismiss certain aspects of the SAC. (Doc. No. 45.) Plaintiffs filed an opposition (Doc. No. 54), and defendant replied (Doc. No. 55). The matter was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 57.) For the reasons set forth below, the motion is GRANTED IN PART AND DENIED IN PART with leave to amend granted as to certain claims.

/////

---

[1] The court initially declined to permit limited civil discovery regarding the identity of the officers because plaintiffs failed to demonstrate that they would be unable to discover the necessary identification information through the state criminal discovery process. (Doc. No. 30 at 9.) However, upon reconsideration, the court did permit limited civil discovery in this area. (*See* Doc. No. 35.)

## DISCUSSION

### A. Motion to Strike

The County moves to strike the entire SAC because plaintiffs did not obtain written consent from defendants or leave of court to amend the complaint under Federal Rule of Civil Procedure 15. (Doc. No. 45-1 at 6.) Defendants acknowledge that the court specifically permitted plaintiffs to amend the complaint to add new defendants in its previous order. (*Id*. (citing Doc. No. 35 at 3–4).) But defendants nonetheless maintain that because the court so indicated in the context of a motion to stay, as opposed to a formal motion to amend, plaintiffs should be required to follow the "appropriate procedures to obtain leave of court." (*Id*.) This argument elevates form over substance and is unpersuasive. Federal Rule of Civil Procedure indicates that leave to amend should be "freely given" when justice so requires. Fed. R. Civ. P. 15(a)(2). To the extent the court's prior order did not expressly grant leave to amend, the court construes plaintiffs' filing of the SAC as a request for leave to amend and grants that request *nunc pro tunc* as of the date of the filing of the SAC.

### B. Motion to Dismiss

1. <u>Legal Standard</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

2. *Monell* Claim

The County argues that plaintiffs have failed to plead with sufficient specificity a claim against it under *Monell v. Department of Social Services*, 436 U.S. 691 (1978). It is well-established that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 69; *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). To state a *Monell* claim against the County, plaintiffs must allege "that an 'official policy, custom, or pattern' on the part of [the County] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)). A *Monell* claim can be established in one of three ways.

*See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). First, a local government may be held liable when it acts "pursuant to an expressly adopted policy." *Id.* (citing *Monell*, 436 U.S. at 694); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Second, a public entity may be held liable for a "longstanding practice or custom." *Thomas*, 763 F.3d at 1170. Such circumstances may arise when, for instance, the public entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees. *Tsao*, 698 F.3d at 1143 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (requiring a plaintiff asserting a claim based on a failure to train to allege facts showing that defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights") (internal brackets omitted) (quoting *Connick*, 563 U.S. at 61). "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. County of Santa Clara*, 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)), overruled on other grounds by *Castro,* 833 F.3d at 1070).

Here, plaintiffs assert several familiar theories of *Monell* liability, by alleging that the municipal defendants "fail[ed] to train, supervise and discipline officers who use excessive and unreasonable injurious force." (SAC at ¶ 29.) In addition, plaintiffs allege that the municipal defendants "assist[ed] said officers in concealing their misconduct by denying access to public records and other pertinent information that would assist in exposing office misconduct." (*Id.*) However, rather than detail any of these allegations, plaintiffs merely allege generally that "[t]hese customs, policies and practices will be specified during discovery in this proceeding." (*Id.*)

/////

a. *Failure to Train*

In limited circumstances, a local government's failure to train or supervise employees may rise to the level of official government policy sufficient to support municipal liability under § 1983. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (stating that a local governmental entity may violate § 1983 if it has a "policy of inaction and such inaction amounts to a failure to protect constitutional rights"). A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate a persistent and widespread municipal policy of inadequate training. *Brown*, 520 U.S. at 409. Moreover, a municipality can only be liable under § 1983 for a policy of inadequate training when the failure to train is deliberately indifferent, that is, where the failure to train reflects a deliberate or conscious choice. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389–91 (1989) (stating that "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program"). Although the Supreme Court has recognized the possibility that a municipality could be liable under § 1983 for failure to train "without proof of a pre-existing pattern of violations," this type of "single-incident liability" is only possible where the unconstitutional consequences of failing to train are "patently obvious." *Connick*, 563 U.S. at 64.

In *Canton*, as an example of a circumstance in which a single incidence would trigger failure to train liability, the Supreme Court discussed a hypothetical city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitations on the use of deadly force. *Canton*, 489 U.S. at 390 n.10. "The likelihood that [a] situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice-namely, a violation of a specific constitutional or statutory right." *Brown*, 520 U.S. at 409. "The high degree of predictability may also support

////

an inference of causation-that the municipality's indifference led directly to the very consequence that was so predictable." *Id*. at 409–10.

In *Connick* the Supreme Court addressed the question of whether failure to train liability may be imposed upon a district attorney's office based upon a single *Brady* violation. *Connick v. Thompson*, 559 U.S. 1004 (2010) (mem.) (granting certiorari "limited to Question 1 presented by the petition"); *Connick v. Thompson*, 2009 WL 3776259, *i (Nov. 6, 2009) (Petition for Writ of Certiorari setting forth questions presented). In distinguishing *Connick*'s facts from the example noted in *Canton*, the Supreme Court found significant "the nuance of the allegedly necessary training." *Connick*, 563 U.S. at 67. The Supreme Court observed that "[t]he *Canton* hypothetical assumes that the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force." *Id.* In such a case, absence of training leaves an officer with an "utter lack of an ability to cope with constitutional situations." *Id.* A single-incident theory can arise in circumstances with "the complete absence of legal training that the Court imagined in *Canton*." *Id*. "[F]ailure-to-train liability is concerned with the substance of the training, not the particular instructional format." *Id.* Deliberate indifference was lacking in *Connick* because the plaintiff's theory was necessarily "that prosecutors were not trained about particular *Brady* evidence or the specific scenario related to the violation in [his] case. That sort of nuance [in training] simply cannot support an inference of deliberate indifference [.]" *Id.*

Here, plaintiffs' complaint does not allege a pattern of similar constitutional violations or any facts that would plausibly suggest that this case presents the type of "single incident" failure to train claim permitted by the Supreme Court in *Canton*. For these reasons, the motion to dismiss any claim based upon "failure to train" will be GRANTED WITH LEAVE TO AMEND.

/////

/////

/////

/////

/////

/////

b. *Failure to Supervise*[2]

Like failure to train, failure to supervise can constitute a policy of inaction that amounts to deliberate indifference to a plaintiff's constitutional rights. *Jackson v. Barnes,* 749 F.3d 755, 763 (9th Cir. 2014). "This requires showing that the defendant was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id*. (internal quotations and citations omitted). "Mere negligence in training or supervision [ ] does not give rise to a *Monell* claim." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). As with the failure to train allegations, the SAC contains no specific allegations about any failure to supervise, let alone any that would plausibly suggest the presence of a pattern of supervisory failures or any other circumstances that would fall under the *Canton* "single incident" jurisprudence. Therefore, the motion to dismiss any failure to supervise claim asserted in the SAC will also be GRANTED WITH LEAVE TO AMEND.

c. *Failure to Discipline*

The SAC also attempts to allege a "failure to discipline" claim, which arguably is a form of a ratification claim. To show ratification, a plaintiff must allege and prove that an official with final policy-making authority approved a subordinate's decision or action and the basis for it. *Sheehan v. City and County of San Francisco,* 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015); *see also Paulos v. FCH1, LLC*, 685 F. App'x 581, 582 (9th Cir. 2017) (relying on *Sheehan* to find that a *Monell* claim failed because plaintiff did not provide sufficient evidence of a pattern of failure to discipline).[3] Stated differently, a final policymaker must make a deliberate choice to endorse the

---

[2] Plaintiffs do not appear to be alleging that any particular supervisor should be held liable in their individual capacity based upon an alleged failure to supervise. *See Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) ("A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.") (internal quotation and citation omitted). Accordingly, the court interprets plaintiffs' claim as being leveled only against the municipal defendants under *Monell*.

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

subordinate's actions in order for the municipality to be liable. *Sheehan*, 743 F.3d at 1231. "The policymaker must have knowledge of the constitutional violation and actually approve of it," and a "mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). Similarly, the "mere failure to discipline [a subordinate] does not amount to ratification of [the subordinate's] allegedly unconstitutional actions." *Sheehan*, 743 F.3d at 1231.

Here, the SAC again fails to sufficiently allege facts to support such a claim. While the SAC does allege that after the alleged use of force the "defendant officers immediately went into 'cover up mode'," (SAC at ¶ 15), this allegation fails to suggest any pattern of similar behavior that might support a failure to discipline claim. *See Lucas v. Cty. of Fresno*, No. 1:18-cv-01488-DAD-EPG, 2019 WL 7370418, at *10 (E.D. Cal. Dec. 31, 2019) (finding allegations that "paint[ed] a pattern of repeated behavior involving multiple officers . . . sufficient to support a theory that [municipal defendant] sanction[ed] a code of silence and a culture of encouraging the covering up of officer misconduct"). Nor does the SAC contain any allegations regarding municipal defendants' review(s) of the alleged conduct at issue in this case. Accordingly, the motion to dismiss will be GRANTED WITH LEAVE TO AMEND as to any failure to discipline claim.

d. *Denying Access to Public Information*

In addition, plaintiffs allege the municipal defendants "assist[ed] said officers in concealing their misconduct by denying access to public records and other pertinent information that would assist in exposing office misconduct." (SAC at ¶ 29.) The parties have not cited any case applying *Monell* to such a theory of liability. The closest analogy the court has been able to identify are the small number of cases discussing the limited circumstances in which a "cover up" may give rise to § 1983 liability. "A 'cover up' theory of section 1983 liability is only viable where the cover-up itself deprives a plaintiff of constitutional rights." *Johnston v. County of Sonoma*, No. C 10-03592 CRB, 2011 WL 855934, at *3 (N.D. Cal. Mar. 9, 2011). It is possible that a "cover-up" that prevents a person who has been wronged from vindicating his or her rights could violate their right of access to the courts, but a causal connection between the alleged cover

up and a constitutional violation would also have to be alleged. *See McNelis v. Ada Cty.*, No. 1-12-CV-00007-MHW, 2013 WL 12139836, at *3 (D. Idaho Jan. 17, 2013).

Here, as mentioned, plaintiffs' complaint merely alleges in conclusory fashion that the individual defendants "went into 'cover up mode' after their initial use of force but before transporting him to the hospital." (SAC at ¶¶ 15–16.) It is further alleged that "at least some of the defendant officers interfered with [plaintiff Bernier] receiving necessary medical treatment, so that he could be rushed to jail," and that this conduct "was intended to prevent documentation of the full extent of Bernier's injuries." (*Id.* at ¶ 16.) But this allegation does not implicate the municipal defendants for purposes of *Monell* liability, since there are no facts alleged suggesting that such conduct was engaged in pursuant to a policy or practice of the municipal defendants. Nor does the SAC specifically (or even generically) indicate how any act by the municipal defendants to deny plaintiffs access to public information is causally connected to any deprivation of plaintiffs' constitutional rights.

For these reasons, the motion to dismiss as to any allegation concerning a cover up based on denial of access to public information will be GRANTED WITH LEAVE TO AMEND.

**C. Undisputed Issues**

The County moves to dismiss any state law claims for direct liability against the County. (Doc. No. 45-1 at 10.) Plaintiffs concede that they seek only to hold the County vicariously (not directly) liable under state law. (Doc. No. 54 at 3.) Accordingly, the County's motion to dismiss as to this issue will be GRANTED WITHOUT LEAVE TO AMEND.

Finally, the County moves to strike the fifth prayer for relief in the SAC (Doc. No. 45-1 at 11), which requests "injunctive relief to prevent Bernier's retaliatory prosecution and to expunge any records pertaining thereto." (SAC at 11.) The court previously held that any such relief is unavailable under *Younger*. Plaintiffs have conceded as much. (Doc. No. 54 at 3.) Accordingly, the County's motion to strike this aspect of the prayer for relief will be GRANTED WITHOUT LEAVE TO AMEND.

/////

/////

**CONCLUSION**

For the reasons set forth above, the County's motion (Doc. No. 45) is GRANTED IN PART AND DENIED IN PART as follows:

1. The County's motion to strike the entire SAC is DENIED;
2. The County's motion to dismiss the *Monell* claim against it is GRANTED WITH LEAVE TO AMEND;
3. The County's motion to dismiss any state law claim brought directly against it is GRANTED WITHOUT LEAVE TO AMEND;
4. The County's motion to strike the prayer for injunctive relief against the ongoing prosecution and to expunge plaintiff Bernier's records related to the same is GRANTED WITHOUT LEAVE TO AMEND; and
5. Within thirty (30) days of service of this order, plaintiffs shall file an amended complaint or a notice that they have elected not to amend.

IT IS SO ORDERED.

Dated: **July 2, 2020**

Dale A. Drozd
UNITED STATES DISTRICT JUDGE