1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10
11

RICHARD CHARLES BERNIER III and
NADEZHDA USTINENKOV,

12

    Plaintiffs,

13

   v.

14

FRESNO POLICE OFFICER ANTHONY
RODRIGUEZ, et al.,

15
16

    Defendants.

17

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:18-cv-1131 JLT SKO

ORDER GRANTING DEFENDANTS' MOTIONS
TO DISMISS AND MOTION FOR A MORE
DEFINITE STATEMENT

(Docs. 66, 67)

18
19
20
21
22

   Richard Bernier III and Nadezhda Ustinenkov contend Bernier was the victim of excessive force used by Fresno County deputies and Fresno police officers during the course of an arrest and that he suffered retaliatory acts for complaining about the actions of the involved officers.  Plaintiffs seek to hold the City of Fresno, Fresno County, police officers, and sheriff deputies liable for violations of federal and state law. (Doc. 64.)

23
24
25
26
27
28

   The City and County of Fresno seek dismissal of Bernier's excessive force claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting the allegations are insufficient to establish *Monell* liability.  (Docs. 66, 67.)  The City, Officer Anthony Rodriguez, and Officer Kevin Jones assert the allegations are also insufficient to state a retaliation claim against the Fresno police officers and seek dismissal of the claim against them officers or, in the alternative, a more definite statement pursuant to Rule 12(e).  (Doc. 66.)

1

1    The Court finds the matter suitable for decision without oral arguments, and no hearing date

2    will be set pursuant to Local Rule 230(g).  For the reasons set forth below, the motions to dismiss and

3    motion for a more definite statement are **GRANTED**.

4    **I.      Background and Allegations**

5         Plaintiffs assert Bernier was driving home from a visit with a friend when he "noticed he was

6    being followed by a Fresno County Sheriff's patrol car," either late in the night of November 7 or early

7    morning of November 8, 2017.  (Doc. 64 at 3, ¶ 11.)  According to Plaintiffs, "Bernier was fearful and

8    wanted to get to family before he encountered law enforcement, so he continued to head home."  (*Id.*)

9    Plaintiffs assert "Bernier was followed by several officers, including defendants Fresno Police Officers

10   Anthony Rodriguez and Kevin Jones, and Fresno County Sheriff's Deputies Garrett Majors, John

11   Robinson, and Nathaniel Wilkinson."  (*Id.*)

12        Plaintiffs allege that "[a]s he neared his residence, Bernier exited his vehicle and jogged toward

13   his front door."  (Doc. 64 at 3, ¶ 12.)  Plaintiffs assert "one of the pursuing patrol cars drove onto the

14   lawn of an adjacent property after Bernier and ran over his left leg, causing his foot break and pinned

15   under the vehicle."  (*Id.* at 3-4, ¶ 12.)  Plaintiffs contend "[t]there was no justification for this use of

16   force, as Bernier did not appear to be armed and was not by his actions endangering any of the officers

17   or any third party."  (*Id.* at 4, ¶ 12.)

18        According to Plaintiffs, "Bernier was unable to stand up, and he was not a threat to any officer

19   or third party as he writhed in pain on the adjacent lawn."  (Doc. 64 at 4, ¶ 13.)  They contend "some of

20   the individual defendants handcuffed [Bernier's] hands behind his back," while he remained on the

21   ground and was "not resisting."  (*Id.*)  Plaintiffs allege, "At that point, no reasonable officer would have

22   believed that the additional use of injurious force on Bernier was lawful."  (*Id.*)  However, Plaintiffs

23   assert "the individual defendants took out their batons and began beating him on his head, face, and

24   body."  (*Id.*, ¶ 14.)

25         "Bernier recalls that some of the officers used their bare fists, others were kicking him, and

26   others were using batons at various times."  (Doc. 64 at 4, ¶ 14.)  Plaintiffs assert, "Bernier begged the

27   defendant officers to stop and simply arrest him," but they continued to beat him "until he lost

28   consciousness."  (*Id.*)  "The last thing that Bernier remembered before blacking out was being kicked in

the head by one or more of the defendant officers."  (*Id.*)  Plaintiffs assert "the defendant officers" caused Bernier "to sustain severe head trauma, a broken orbital bond that ultimately required an implant and titanium plate, and numerous contusions and abrasions all over his body."  (*Id.*)

Plaintiffs report that "Bernier was transported by ambulance to Community Regional Medical Center and was handcuffed to the bed."  (Doc. 64 at 4, ¶ 16.)  Plaintiffs allege "at least some of the defendant officers interfered with his receiving necessary medical treatment, so that he could be rushed to jail."  (*Id.*)  Plaintiffs contend this "interference followed Bernier's protestations and criticisms of the defendant officers' actions, and also was intended to prevent documentation of the full extent of Bernier's injuries."  (*Id.*)  Plaintiffs assert "Bernier was hurriedly released from the hospital" and transported to the Fresno County Jail.  (*Id.*)

According to Plaintiffs, "At the jail, Bernier was sent to one of the regular inmate floors instead of the infirmary, which Bernier interpreted as meaning that the officers would permit or encourage inmates to assault him, so that they would then be able to conceal or plausibly deny their wrongdoing."  (Doc. 64 at 5, ¶ 18.)  Plaintiffs assert: "Under state law, applicable jail standards, and applicable jail policy, Bernier should not have been assigned to general population when he clearly required medical attention and monitoring."  (*Id.*)  Thus, "Bernier believes his being sent to general population was in retaliation for his criticism of the defendant officers and his asking them to identify themselves, and also as part of a cover-up effort."  (*Id.*)

Plaintiffs assert that "at both the hospital and the jail, the defendant officers made numerous sadistic and despicable comments to Bernier."  (Doc. 64 at 5, ¶ 17.)  Plaintiffs allege:

> One of the defendant officers bragged about beating Bernier, saying that he and the others "tuned him up" and also saying "that is what happens when you don't listen to us."  One of the defendant officers also stated that Bernier was "lucky" they did not have a K-9 available.  One of the defendant officers made a comment about Bernier's vehicle having Florida license plates and needing to learn "how things are done in Fresno."  Moreover, when Bernier protested and criticized the defendant officers for what they had done to him and also for their comments, and also asked the officers for their names and badge numbers, the officers refused to identify themselves and responded with expletives and comments that he would have to "get a lawyer."

(*Id.*)

Bernier was released "[s]everal hours later, after posting bail."  (Doc. 64 at 4, ¶ 16.)  "Upon being released, Bernier returned to Community Regional Medical Center for further treatment of his

injuries." (*Id.* at 5, ¶ 19.)  Plaintiffs report he "was admitted and remained at the hospital for several days due to the severity of his injuries." (*Id.*)

Plaintiffs assert in December 2017, "Bernier received a notice that the District Attorney had declined to prosecute him, that a copy of his arrest report had been sent to the Department of Justice, and that his arrest had been retroactively deemed to be a detention." (Doc. 64 at 5, ¶ 20.)  "On December 30, 2017, Bernier, through his retained attorney, sent a preservation request letter to the Fresno County Sheriff's Department, which informed that Bernier would be making a claim based on the events of November 8, 2017…." (*Id.* at 6, ¶ 21.)  On January 8, 2018, the District Attorney filed charges against Bernier. (*Id.*, ¶ 22.)  Plaintiffs contend this was "[n]ot coincidently… after Bernier gave notice that he was going to take legal action against those responsible for abusing him on November 8, 2017." (*Id.*)  Thus, Plaintiffs allege it was "retaliatory prosecution." (*Id.*)

According to Plaintiffs, "Bernier's physical injuries have still not fully healed nearly two years later." (Doc. 64 at 6, ¶ 23.)  For example, Plaintiffs report Bernier "has frequent headaches he never had before" and "is simply not the same mentally or neurologically as he was previously – he has severe memory and concentration issues and related dysfunction." (*Id.*)  In addition, Plaintiffs assert "Bernier also has also been diagnosed with post-traumatic stress disorder and is plagued with intrusive thoughts and nightmares about the abuse he suffered, as well as the currently pending retaliatory prosecution." (*Id.*)

Nadezhda Ustinenkov, who has been married to Bernier for nine years, reports she "also has sustained considerable damages as a result of the harm the foregoing incidents have caused in her marital relationship with Bernier." (Doc. 64, ¶¶ 5, 24.)  Plaintiffs contend, "Instead of being a spouse and equal partner as she used to be, Ustinenkov is now more Bernier's caretaker and protector and source of comfort." (*Id.* at 6, ¶ 24.)  Plaintiffs assert that "Bernier's and Ustinenkov's marital relationship has been damaged even further by the retaliatory prosecution currently pending against them and the related upheaval they now experience." (*Id.*)

Based upon the foregoing, Bernier identifies the following causes of action in the Third Amended Complaint: (1) excessive force in violation of the Fourth and Fourteenth Amendments against the individual/fictious defendants, the City, and the County; (2) retaliation in violation of the

First Amendment against all individual and fictitious defendants; (3) violation of the Bane Act against the Fresno County deputies and the County; (4) battery against all County defendants; and (5) negligence against all County defendants. (*See generally* Doc. 64 at 7-13.)  In addition, Ustinekov seeks to hold the County defendants liable for loss of consortium under state law.  (*Id.* at 13.)

The City Defendants—including the City of Fresno, Officer Rodriguez, and Officer Jones—filed their motion to dismiss and motion for more definite statement on August 14, 2020.  (Doc. 66.) Likewise, the County Defendants—including the County of Fresno, Deputy Major Robinson, and Deputy Major Wilkinson— filed their motion to dismiss on August 14, 2020.  (Doc. 67.)  Plaintiffs filed their opposition to the motion on August 28, 2020.  (Doc. 68.)  The County Defendants filed a reply on September 4, 2020 (Doc. 69) and the City Defendants filed a reply on September 8, 2020 (Doc. 70.)

## II.    Motions to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

5

When considering a motion to dismiss, the Court must accept the factual allegations made in the complaint as true. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976). A court must construe the pleading in the light most favorable to the plaintiffs, and resolve all doubts in favor of the plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent the pleadings can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## III.     Motions for More Definite Statement

Before the filing of a responsive pleading, a party may also seek a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure, if the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed.R.Civ.P. 12(e). "The purpose of Rule 12(e) is to provide relief from a pleading that is unintelligible, not one that is merely lacking detail." *United States EEOC v. Alia Corp.*, 842 F. Supp. 2d 1243, 1250 (E.D. Cal. Feb. 6, 2012) (citing *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1169 (E.D.Cal.2005).

When a pleading "is specific enough to inform the responding party of the substance of the claim being asserted or where the detail sought is otherwise obtainable through discovery, a motion for a more definite statement should be denied." *United States EEOC*, 842 F. Supp. 2d at 1250 (citing *Famolare, Inc. v. Edison Bros. Stores, Inc*., 525 F.Supp. 940, 949 (E.D.Cal.1981) ["Due to the liberal pleading standards in the federal courts embodied in Federal Rule of Civil Procedure 8(e) and the availability of extensive discovery, the availability of a motion for a more definite statement has been substantially restricted"]). Whether to grant a Rule 12(e) motion for a more definite statement lies

1   within the wide discretion of the district court. *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1123, 1130

2   (E.D. Cal. 2009).  However, motions for more definite statements pursuant to Rule 12(e) are "viewed

3   with disfavor, and are rarely granted." *Id.* (citation omitted).

4   **IV.     Discussion and Analysis**

5           The City and County of Fresno seek dismissal of Bernier's excessive force claim, asserting the

6   allegations are insufficient to establish *Monell* liability.  (Docs. 66, 67.)  The City, Officer Anthony

7   Rodriguez, and Officer Kevin Jones assert the allegations are also insufficient to state claims for

8   excessive force and retaliation against the individual Fresno police officers or for the City Defendants

9   "to understand what acts … each of its individual officers are being accused of engaging in so as to

10  enable them in investigating and preparing a proper defense to such claims."  (Doc. 66 at 2.)

11          **A.     Section 1983 Claims**

12          An individual may bring an action for the deprivation of civil rights pursuant to 42 U.S.C. §

13  1983 ("Section 1983"), which "is a method for vindicating federal rights elsewhere conferred." *Albright*

14  *v. Oliver*, 510 U.S. 266, 271 (1994). In relevant part, Section 1983 provides:

15          Every person who, under color of any statute, ordinance, regulation, custom, or usage,
        of any State or Territory or the District of Columbia, subjects, or causes to be subjected,
16      any citizen of the United States or other person within the jurisdiction thereof to the
        deprivation of any rights, privileges, or immunities secured by the Constitution and
17      laws, shall be liable to the party injured in an action at law, suit in equity, or other
        proper proceeding for redress…

18

19  42 U.S.C. § 1983.  To state a cognizable claim for a Section 1983 violation, a plaintiff must allege (1)

20  the deprivation of a constitutional right and (2) a person who committed the alleged violation acted

21  under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670

22  (9th Cir. 1976).

23          A plaintiff must allege a specific injury was suffered and show causal relationship between the

24  defendant's conduct and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  Thus,

25  Section 1983 "requires that there be an actual connection or link between the actions of the defendants

26  and the deprivation alleged to have been suffered by the plaintiff."  *Chavira v. Ruth*, 2012 WL

27  1328636, at *2 (E.D. Cal. Apr. 17, 2012).  A person deprives another of a constitutional right "if he

28  does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he

1   is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v.*

2   *Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  In other words, "[s]ome culpable action or in action must be

3   attributable to defendants."  *See Puckett v. Corcoran Prison - CDCR*, 2012 WL 1292573, at *2 (E.D.

4   Cal. Apr. 13, 2012).

5   **B.     Excessive Force**

6          The Supreme Court of the United States determined that the Due Process Clause of the

7   Fourteenth Amendment protects individuals who have not yet been convicted of a crime "from the use

8   of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 388 (1989).

9   However, allegations of excessive force during an arrest are analyzed under the Fourth Amendment,

10  which prohibits arrests without probable cause or other justification.  *Id.* ("claim[s] that law

11  enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other

12  'seizure' ... are properly analyzed under the Fourth Amendment's 'objective reasonableness'

13  standard"); *see also Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("the use of force to effect an

14  arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures"). The Supreme Court

15  explained,

16          As in other Fourth Amendment contexts … the "reasonableness" inquiry in an
            excessive force case is an objective one: the question is whether the officers' actions
17          are "objectively reasonable" in light of the facts and circumstances confronting
            them, without regard to their underlying intent or motivation. An officer's evil
18          intentions will not make a Fourth Amendment violation out of an objectively
            reasonable use of force; nor will an officer's good intentions make an objectively
19          unreasonable use of force constitutional.

20  *Graham*, 490 U.S. at 396-97 (1989) (internal citations omitted).  In applying this standard, the Ninth

21  Circuit instructs courts to consider "the totality of the circumstances and . . . whatever specific factors

22  may be appropriate in a particular case." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

23          1.      Liability of the City police officers

24          In *Graham*, the Supreme Court set forth factors to be considered in evaluating whether the force

25  used was reasonable, "including the severity of the crime at issue, whether the suspect poses an

26  immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or

27  attempting to evade arrest by flight." *Id.*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9

28  (1985).  In addition, the Court may consider "whether officers administered a warning, assuming it was

8

practicable." *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013) (citation omitted).  Ultimately, the "reasonableness" of the actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  Plaintiffs contend "the excessive force in this case consisted of (1) Bernier's leg being run over by one of the defendant officers, causing him to break his foot; and (2) Bernier's being beaten severely and to the point of unconsciousness by the defendant officers."  (Doc. 64 at 7, ¶ 26.)  Defendants do not argue that such actions may constitute unreasonable use of force.

The City Defendants assert the allegations are insufficient to determine which actions Officers Rodriguez and Jones are alleged to have taken, and the Court agrees.  Plaintiffs assert Officers Rodriguez and Jones were among those who followed Bernier as he drove to his residence.  (Doc. 64 at 3, ¶ 11.)  However, the allegations are insufficient to determine the actions, if any, Officers Rodriguez and Jones took in the subsequent detention of Bernier.  For example, though Plaintiffs allege a patrol car drove onto the lawn and ran over his leg, Plaintiffs do not clarify whether the car belonged to the City or the County, or whether it was driven by a City police officer or County sheriff deputy, let alone whether Officers Rodriguez and Jones where the drivers.  (*See id.* at 3-4, ¶¶ 12.)

Furthermore, it is unclear whether Plaintiffs contend each and every responding officer and deputy "took out their batons and began beating him on his head, face, and body."  (*See* 64 at 3 at 4, ¶ 13.)  Indeed, other allegations in the complaint address only the actions of a single individual on the body camera footage, as Plaintiffs contend "there is available body worn camera footage of Bernier being handcuffed and prone on the ground and still being kicked in the face and injured by an officer who was seemingly wearing a steel toe shoe or boot." (Doc. 64 at 9, ¶ 29 (G).)  Plaintiffs fail to identify this officer—either as a named defendant or "Doe" defendant.[1]  The facts as alleged are insufficient to link either Officers Rodriguez and Jones to the alleged acts of excessive force.  Toward this end, the motion for a more definite statement by the City Defendants is granted as to the first cause of action, and the claims against the City police officers are dismissed with leave to amend.

///

---

[1] It is also unclear whether Plaintiffs use the word "officer" to refer to both police officers and deputies such that the Court may determine whether Plaintiffs believe this individual was one of the identified City Defendants.

1           <u>2.     Municipal liability</u>

2         The Supreme Court observed that "Congress did not intend municipalities to be held liable

3   unless action pursuant to official municipal policy of some nature caused a constitutional tort."

4   *Monell v. New York City Dep't. of Soc. Services*, 436 U.S. 658, 691 (1978).  Thus, a local government

5   unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of

6   liability. *Id.,* 436 U.S. at 691 ("a municipality cannot be held liable solely because it employs a

7   tortfeasor"). Rather, a local government entity may only be held liable if it inflicts the injury of which

8   a plaintiff complains through a governmental policy or custom.  *Id.* at 694; *Gibson v. County of*

9   *Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002).

10         To establish municipal liability against the City and County, Plaintiffs must allege Bernier: (1)

11   was deprived of a constitutional right; (2) the City and County each had a policy; (3) these policies

12   amounted to deliberate indifference of his constitutional right; and (4) the policies were "the moving

13   force behind the constitutional violation."  *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)

14   (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *see also Monell*, 436 U.S. at 690-

15   92. There are three methods by which a policy or custom of a government may be demonstrated when:

16           (1) A longstanding practice or custom...constitutes the standard operating procedure
        of the local government entity;

17

18           (2) The decision-making official was, as a matter of law, a final policymaking
        authority whose edicts or acts may fairly be said to represent official policy in the
        area of decision; or

19

20           (3) An official with final policymaking authority either delegated that authority to, or
        ratified the decision of, a subordinate.

21   *Pellum v. Fresno Police Dep't*, 2011 WL 350155, at *3 (E.D. Cal. Feb. 2, 2011) (citing *Menotti v. City*

22   *of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)).  Furthermore, a policy may be inferred if there is

23   evidence of repeated constitutional violations for which officers were not reprimanded.  *Menotti*, 409

24   F.3d at 1147.

25         A policy amounts to deliberate indifference where "the need for more or different action is so

26   obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional

27   rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need."

28   *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (citing *Oviatt*, 954 F.2d at 1477-78), *accord*

1  *Canton*, 489 U.S. at 390.  To establish deliberate indifference by a government, "the plaintiff must show

2  that the municipality was on actual or constructive notice that its omission would likely result in a

3  constitutional violation." *Gibson*, 290 F.3d at 1186 (citing *Farmer*, 511 U.S. at 841).  Importantly,

4  municipal liability for an "improper custom may not be predicated on isolated or sporadic incidents; it

5  must be founded upon practices of sufficient duration, frequency and consistency that the conduct has

6  become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

7  　　　　Relevant to his claims of municipal liability, Plaintiffs assert the City and County "are

8  responsible for Bernier's damages because their customs, policies and practices were the moving force

9  behind the individual defendant's constitutional misconduct, since the attendant circumstances

10  indicate there was a pervasive culture of using excessive force and covering it up in these agencies."

11  (Doc. 64 at 7, ¶ 29.)  Specifically, Plaintiffs contend "these entity defendants' customs, policies and

12  practices of failing to train, supervise and discipline officers who use excessive and unreasonable

13  injurious force and also is assisting said officers in concealing their misconduct by denying access to

14  public records and other pertinent information that would assist in exposing office misconduct."  (*Id.*)

15  Plaintiffs allege "[t]hese customs, policies and practices will be further specified during discovery in

16  this proceeding."  (*Id.*)

17  　　　　　　　　*a.*　　*Failure to train*

18  　　　　The Supreme Court held that "the inadequacy of police training may serve as the basis for

19  [Section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of

20  persons with whom the police come into contact." *Canton*, 489 U.S. at 388.  The omission of training

21  must reflect a "deliberate or conscious choice by a municipality" for the City or the County to be liable

22  for its failures under Section 1983.  *Id.*  Therefore, the municipal defendants would be liable under

23  Section 1983 if Bernier can show a failure to train the involved deputes and officers amounted to

24  deliberate indifference, and a causal connection existed between the failure to train and the injuries

25  Bernier claims.  *See Canell v. Lightner*, 143 F.3d 1210, 1213-14 (9th Cir. 1998) (to impose liability on

26  a supervisor for failure to adequately train, a plaintiff must demonstrate that the training was

27  inadequate, the training was the deliberate or conscious choice of the supervisor, and the training

28  caused the alleged constitutional violation).

1    Plaintiffs contend that "[r]easonable officers working for an agency that provided proper

2    training and supervision would have never used grossly excessive force under such circumstances, if

3    only for fear of being reported by another officer or civilian on scene." (Doc. 64 at 8, ¶ 29(A).)  In

4    addition, Plaintiffs allege officers joked about the use of excessive force while at the hospital and jail,

5    and assert "reasonable officers working for an agency that provided proper training and supervision

6    would have never openly admitted and discussed using grossly excessive force under such

7    circumstances, if only for fear of being reported by another officer or by a healthcare provider who

8    overheard their statements." (*Id.* ¶ 29(B).)  Plaintiffs contend that while the officers wore body

9    cameras, the officers knew it "either had to be uploaded to the Fresno Police Department server or

10   would have to be erased in violation of written policy." (*Id.* at 8-9, ¶ 29(E).)  Plaintiffs conclude:

11   
> [R]easonable officers working for an agency that provided proper
> supervision would not have used grossly excessive force, if only because the
> existence of body worn footage would have documented conduct that could have

12   
> cost them their jobs and/or subjected them to criminal consequences. Likewise,
> reasonable officers working for an agency that provided proper training and

13   
> supervision would not have used grossly excessive force, if only because the erasure
> of available body worn camera footage would have been detectable by the agency's

14   
> supervision and management and thus would have exposed them to severe
> professional or criminal consequences.

15   

16   (*Id.* at 9, ¶ 29(E).)

17   Significantly, these allegations are conclusory in nature.  Plaintiffs do not offer any facts

18   regarding the training the "defendant officers"[2] received—and may have defied— or facts

19   demonstrating the training failures were the product of deliberate indifference or conscious choice by

20   policymakers for either the City or the County.  Rather, it appears that Plaintiffs merely re-assert

21   allegations regarding the conduct of the responding officers in an attempt to impose liability under a

22   thinly veiled theory of *respondeat superior*.  *See Monell,* 436 U.S. at 691.

23   As this Court previously observed, where municipal liability has been imposed "cases in which

24   supervisors have been held liable under a failure to train… theory involve conscious choices made

25   with full knowledge that a problem existed."  *Woodward v. Kokor*, 2017 WL 2572456, at *4 (E.D.

26   

27   _____

     [2] Again, it is unclear whether Plaintiff is including the sheriff *deputies* in the allegations, or only referring to the
28   police officers when using this term.  This is particularly problematic because Plaintiffs seek to impose municipal liability
     upon both the City and the County for the failure to train and supervise.  For purposes of this motion only, the Court will
     assume the allegations refer to both the sheriff deputies and police officers.

1    Cal. June 13, 2017) (citation omitted); *see also Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)

2    (explaining that to impose liability for failure to train, "a plaintiff must usually demonstrate a pattern

3    of violations and that the inadequacy of the training is obvious and obviously likely to result in a

4    constitutional violation").  Here, however, there are no facts alleged indicating the City had knowledge

5    of a pattern of violations by its police officers or the County having knowledge of a pattern of

6    violations by its deputies, such that the inadequacy of training would be obvious and amount to

7    deliberate indifference by either municipality.

8         Moreover, to show allege deliberate indifference, it is "ordinarily necessary" to allege "a pattern

9    of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62

10   (2011).  In certain cases, however, a showing of "obviousness . . . can substitute for the pattern of

11   violations ordinarily necessary to establish municipal liability." *Connick*, 563 U.S. at 63. This might

12   occur in a situation where "the unconstitutional consequences of failing to train could be so patently

13   obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations,"

14   such as arming a police force and failing to train the officers on the use of deadly force. *Connick*, 563

15   U.S. at 63; *Canton*, 489 U.S. at 390.  However, there are no facts supporting a conclusion that this case

16   presents the type of "single incident" failure to train claim contemplated by the Supreme Court in

17   *Canton*.  Thus, the facts alleged are insufficient to establish *Monell* liability for the City and the County

18   on the theory of failure to train employees.

19                            *b.    Failure to supervise*

20        A municipality's failure to supervise its employees can also give rise to Section 1983 liability.

21   *See Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014).  Similar to a failure to adequately train, a

22   constitutional violation may arise where the failure to supervise amounts to "deliberate indifference."

23   *Canton*, 489 U.S. at 388; *Davis v. Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (observing there is

24   "no principled reason to apply a different standard in adequate supervision" cases than that applied in

25   inadequate training).  "This requires showing that the defendant was on actual or constructive notice

26   that its omission would likely result in a constitutional violation."  *Jackson*, 749 F.3d at 763 (internal

27   quotations and citations omitted).  "Mere negligence in training or supervision … does not give rise to

28   a *Monell* claim."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

1    The City argues that "[t]here are no allegations contained in the TAC to support the assertion

2    that the Defendant Fresno PD officers work for an agency that does not provide proper supervision.

3    Further, there is no factual support or allegations which plausibly suggest the presence of a pattern of

4    supervisory failures or that the circumstances warrant 'single-incident liability.'"  (Doc. 66-1 at 12.)

5    Similarly, the County argues that "there are no factual allegations demonstrating that the County was

6    on notice that any of the Fresno County Deputies had a history or prior incidents of similar bad

7    conduct."  (Doc. 67-1 at 10.)

8    Significantly, Plaintiffs' allegations concerning the failure to supervise are entwined with the

9    allegations related to failure to train.  (*See* Doc. 64 at 7-9, ¶ 29.)  As the City and County argue, the

10    allegations are insufficient to show knowledge— by either municipality—  of a failure to supervise the

11    police officers and sheriff deputies, or that such pattern of a failure to supervise was likely to result in

12    a constitutional violation.  Absent such allegations, Bernier fails to establish *Monell* liability on the

13    theory of failure to supervise.  *See Canton*, 489 U.S. at 388; *Jackson*, 749 F.3d at 763.

14                              *c.*      *Failure to discipline*

15    Plaintiffs allege the City and County are liable for the "failure to discipline" the officers and

16    deputies who used excessive force.  (Doc. 64 at 7, ¶ 29.)  According to Plaintiffs, "based on discovery

17    in the criminal proceeding … none of the defendant officers were in any way investigated or

18    disciplined, although there is available body worn camera footage of Bernier being handcuffed and

19    prone on the ground and still being kicked in the face and injured by an officer who was seemingly

20    wearing a steel toe shoe or boot."  (*Id.* at 9, ¶ 29(G).)  Plaintiffs contend, "Although such conduct

21    constitutes assault with a deadly weapon causing great bodily injury and is a serious and violent felony

22    under California Penal Code § 667.5, none of the defendant officers were required to answer for their

23    conduct in any way."  (*Id.*)  Plaintiffs assert, in essence, the City and County are liable for ratifying the

24    actions of their employees.

25    The Ninth Circuit determined that "evidence of repeated constitutional violations for which the

26    errant municipal officers were not discharged or reprimanded" can be sufficient to support a finding of

27    municipal policy.  *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011).  The practice

28    must, however, be "of sufficient duration, frequency and consistency to constitute an actionable

1   policy." *Trevino*, 99 F.3d at 920.  Consequently, a single instance of failure to discipline an officer,

2   without something more, is insufficient to establish ratification. *See Haugen v. Brosseau*, 339 F.3d

3   857, 875 (9th Cir. 2003) (citing *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989)); *see also Kanae*

4   *v. Hodson*, 294 F. Supp. 2d 1179, 1191 (D. Haw. 2003).

5           To state a cognizable claim based upon ratification, a plaintiff must allege an official with final

6   policy-making authority approved a subordinate's action, as well as the basis for the action. *Sheehan v.*

7   *City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other by grounds*

8   *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015); *see also Paulos v. FCH1, LLC*,

9   685 F. App'x 581, 582 (9th Cir. 2017) (relying on *Sheehan* to find that a *Monell* claim failed because

10  the plaintiff did not provide sufficient evidence of a pattern of failure to discipline). Stated differently,

11  a final policymaker must make a deliberate choice to endorse the subordinate's actions in order for the

12  municipality to be liable.  *Sheehan*, 743 F.3d at 1231. "The policymaker must have knowledge of the

13  constitutional violation and actually approve of it," and a "mere failure to overrule a subordinate's

14  actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th

15  Cir. 2004).  Similarly, the "mere failure to discipline [a subordinate] does not amount to ratification of

16  [the subordinate's] allegedly unconstitutional actions." *Sheehan*, 743 F.3d at 1231.

17          Plaintiffs have not alleged facts sufficient to support municipal liability on the basis of failure

18  to discipline or ratification.  There are no allegations of a pattern of repeated behavior—whether with

19  the identified defendants or other officers and deputies—such that the Court may find a pattern of

20  failure to discipline.  Further, there are no allegations that policymakers for the City and County were

21  involved with the decision to not discipline the employees.  Consequently, Bernier fails to state a

22  cognizable claim against the City and County for excessive force on these grounds.

23                          *d.      Denial of access to public information*

24          Plaintiffs allege the City and County have customs, policies, and practices through which they

25  are assisting "officers who use excessive and unreasonable injurious force… in concealing their

26  misconduct by denying access to public records and other pertinent information that would assist in

27  exposing office misconduct."  (Doc. 64 at 7, ¶ 29.)  Again, however, Plaintiffs failed to include any

28  supporting factual allegations.

Furthermore, this Court previously observed that Plaintiffs "have not cited any case applying *Monell* to such a theory of liability." (Doc. 63 at 10.) The closest analogy the Court identified was "the small number of cases discussing the limited circumstances in which a "cover up" may give rise to § 1983 liability." (*Id.*, citing e.g., *Johnston v. County of Sonoma,* 2011 WL 855934, at *3 (N.D. Cal. Mar. 9, 2011 ["A 'cover up' theory of section 1983 liability is only viable where the cover-up itself deprives a plaintiff of constitutional rights"]; *McNelis v. Ada Cty.*, 2013 WL 12139836, at *3 (D. Idaho Jan. 17, 2013).) As the Court explained, "It is possible that a "cover-up" that prevents a person who has been wronged from vindicating his or her rights could violate their right of access to the courts, but a causal connection between the alleged cover up and a constitutional violation would also have to be alleged. (Doc. 63 at 10-11, citing *McNelis*, 2013 WL 12139836, at *3.)

The City argues that "the denial of access to public information as it relates to establishing *Monell* liability is inapplicable insofar as it does not indicate that any act was causally connected to any deprivation of Plaintiffs' constitutional rights." (Doc. 66-1 at 13.) In addition, the City argues that Plaintiffs do "not allege facts suggesting that the denial of access was engaged in pursuant to a policy or practice of the City Defendants." (*Id.*) Likewise, the County argues any such theory of a "cover up" or "denial of access" liability fails because "no factual allegations have been made that any County employee denied Plaintiffs access to public records or any other pertinent information relating to the incident or that such alleged conduct was engaged in pursuant to a policy, practice, or custom." (Doc. 67-1 at 11-12.)

As the City and County argue, Plaintiffs have not alleged they sought access to public records from either the City or the County, or that their efforts to obtain pertinent information were thwarted by the municipalities. Plaintiffs fail also to link any purported denial of access to information to a deprivation of their constitutional rights. Thus, Plaintiffs fail to state a cognizable claim based upon this theory of municipal liability.

### e.   Conclusion

Plaintiffs failed to allege facts sufficient to impose municipal liability upon either the City or the County under *Monell* related to the alleged use of excessive force against Bernier. Consequently, the motions to dismiss the first cause of action against the City and the County are granted.

C.      **Retaliation under the First Amendment**

"The First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006), *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).)  To state a cognizable claim for retaliation in violation of the First Amendment, Bernier must allege: "(1) he engaged in a constitutionally protected activity; (2) as a result, he was subjected to adverse action that would chill a person of ordinary firmness from continuing to undertake the activity; and (3) there was a substantial causal relationship between the protected activity and the adverse action." *Id.* (footnote omitted).  Accordingly, a plaintiff "must allege facts ultimately enabling him to 'prove the elements of retaliatory animus as the cause of injury,' with causation being 'understood to be but-for causation.'" *Lacey v. Maricopa County*, 693 F.3d 896, 916-17 (9th Cir. 2012) (quoting *Hartman*, 547 U.S. at 260).

The City Defendants seek dismissal of the second cause of action by Bernier for retaliation in violation of the First Amendment.  (Doc. 66-1 at 14.)  The City Defendants contend "Plaintiffs have not alleged that Bernier's activity was protected by the First Amendment or any facts which show he was engaged in protected speech so as to establish a violation."  (*Id.*)  In addition, the City Defendants assert Plaintiffs did not allege Bernier's "protected speech was a substantial or motivating factor in the City Defendants' alleged actions of allegedly denying Bernier timely medical care, assigning Bernier to general population, and recommending the filing of criminal charges against Bernier."  (*Id.*) Furthermore, the defendants assert "it is unclear which, if any, of these alleged actions are even attributable to the individual City Officers."  (*Id.*)

1.      **Protected activity**

Plaintiffs allege "Bernier protested and criticized the defendant officers for what they had done to him and also for their comments, and also asked the officers for their names and badge numbers."  (Doc. 64 at 5, ¶ 17.)  In addition, Plaintiffs assert that Bernier "inform[ed] the individual defendants that he would be taking legal action."  (*Id.* at 10, ¶ 32.)

Significantly, courts have determined that criticizing officers and asking for badge numbers are protected activities under the First Amendment.  *See, e.g.*, *Houston v. Hill*, 482 U.S. 451, 461 (1987) ("the First Amendment protects a significant amount of verbal criticism and challenge directed at

17

police officers"); *see also Engman v. City of Ont.*, 2011 (C.D. Cal. May 23, 2011) (indicating

protected activities included "expletive-laced comments and gestures directed toward the officers" as

well as "demanding their badge numbers"); *Hadden v, Wathen*, 2018 WL 4222882, at *20 (W.D.

Kent. Sept. 5, 2018) (finding the plaintiff "engaged in protected activity" when he "asked [the officer]

for his badge number"); *Cruthird v. Boston Police Dep't*, 2010 WL 4449732, at *6 (D. Mass. Nov. 3,

2010) (holding the plaintiff stated a claim for unlawful retaliation where she alleged that her arrest was

in retaliation for exercising her First Amendment rights "because she asked the officers for their badge

numbers and protested her innocence"). Thus, contrary to the defendants' assertions, Bernier alleged

he engaged in an activity protected by the First Amendment.

### 2.    Adverse actions

Plaintiffs allege "[t]he individual defendants, acting under color of law, retaliated against

Bernier" by taking the following actions:

> (1) denying Bernier timely and necessary medical care, both at the hospital and the
> jail, on November 8, 2017, in the immediate aftermath of his criticism and complaint
> about the individual defendants' misconduct and also in an effort to prevent, deter and
> intimidate him from taking legal action; (2) assigning Bernier to general population
> on November 8, 2017, despite his injures, in the immediate aftermath of his criticism
> and complaint about the individual defendants' misconduct and also in an effort to
> prevent, deter and intimidate him from taking legal action; and (3) recommending the
> filing of criminal charges against Bernier after he made it known that he was going to
> take legal action, even though it had previously been decided that no charges would
> be filed against him.

(Doc. 64 at 10, ¶ 32.)

The City Defendants do not argue these were not adverse actions under the First Amendment.

(*See* Doc. 61-1 at 14-15.)  However, the defendants argue the allegations are insufficient against the

individual officers because "Plaintiffs' do not allege that Defendant Officer Rodriguez or Defendant

Officer Jones engaged in the alleged retaliatory activity, as there is no specificity or identification

regarding which individual Defendants acted to assign Bernier to general population, deny medical

care, and recommend the filing of criminal charges."  (*Id.* at 15.)

On the other hand, Plaintiffs maintain the allegations are sufficient against the officers.  (Doc.

68 at 4.)  According to Plaintiffs, the City Defendants "ignore[] plaintiffs' contention that all of the

named defendants participated in this pattern of retaliation."  (*Id.*, citing Doc. 64, ¶¶ 16-22, 32.)

Plaintiffs argue: "There is no lack of clarity in these allegations, and while discovery may show that only some subset of defendants participated, Bernier … is not required, particularly without conducting any discovery, to specify the precise roles of defendants he alleges engaged in joint activity." (*Id.* at 4, citing *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1448 (9th Cir. 1986); *Call v. Badgley*, 254 F.Supp.3d 1051, 1066 (N.D. Cal. 2017).)

In *Rutherford*, the plaintiff called the police from a residence hotel to report his friend was assaulted by the hotel manager, and then waited across the street from the hotel for the police to arrive. *Id.*, 780 F.2d at 1445.  Rutherford asserted that several officers responded to the residence hotel, at which time two officers entered the hotel and "five or six other Berkley officers" approached Rutherford, including named defendants: officers Hood, McBride and Houpt.  *Id.* Rutherford alleged the officers "without any provocation and without placing him under arrest, the officers detaining him threw him to the ground, punched, kicked, and handcuffed him."  *Id.*  Reviewing the appeal of summary adjudication in favor of the officers, the Court observed: "While Rutherford could not specifically state whether defendants Officers Houpt, McBride or Hood punched or kicked him, he did testify that they were among the five or six officers who were surrounding him while he was being beaten and that he saw each of their faces while he was being beaten."  *Id.* at 1448.  In addition, the Court noted the "three officers agreed that they were among the five or six officers who detained, arrested and handcuffed Rutherford, but denied punching or kicking Rutherford."  *Id.*  Thus, the Court found summary judgment should not have been granted, because "a jury could reasonably infer that the named officers were participants in punching or kicking Rutherford."  *Id.*

Significantly, the facts considered in *Rutherford* provided more information than Bernier alleges in support of his claim.  Bernier alleges that he was followed to his residence by County sheriff deputies as well as City police officers, which included Officers Rodriguez and Jones.  (Doc. 64 at 3, ¶ 11.)  However, these are the only specific allegations as to Rodriguez and Jones.  The remainder of the allegations are made generally as to all individual defendants—which includes unidentified officers and deputies—without attributing any specific action to individual defendants.  For example, Bernier does not allege that he asked whether Rodriguez and Jones were among the officers who beat him or that Bernier asked Rodriguez and Jones for their badge numbers.  Bernier also does not allege Rodriguez

and Jones were at the hospital and had an opportunity to interfere with his medical treatment or were involved in his transport to the Fresno County Jail—a facility run by the County, rather than the City— or booking at the facility to have Bernier placed in the general population.  Rather, Bernier asserts that "*some* of the officers" beat him, and "*some* of the defendant officers interfered with his receiving necessary medical treatment."  (Doc. 64, ¶¶ 14, 16 [emphasis added].)  Unlike the facts before the Court in *Rutherford*, Bernier has not alleged facts sufficient to support a conclusion that Officers Rodriguez and Jones were at the hospital or Fresno County Jail where the alleged retaliatory actions took place.  Also, there are no facts supporting a conclusion that Officers Rodriguez and Jones knew of the preservation request sent to the Fresno County Sheriff's Department or recommending the filing of criminal charges.  Thus, Plaintiffs' reliance upon *Rutherford* is misplaced.

The allegations in this action are akin to *Call*—also cited by Plaintiffs— where the Northern District indicated a plaintiff must do more than simply place an officer at the scene of an alleged constitutional violation.  *Id.*, 254 F. Supp. 3d at 1065-66.  In *Call*, the plaintiff asserted constitutional violations by officers who executed a search warrant in his home.  *Id.* at 1055, 1065-66.  The court found Call failed to present evidence "about which of the several officers may be responsible" for the alleged violation, and instead "offer[ed] nothing more than their mere presence at his residence."  *Id.* at 1065.  The court explained Call "cannot sustain a group liability theory" because "[a]n officer's liability under section 1983 is predicated on his 'integral participation' in the alleged violation.'"  *Id.* (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007)).

Likewise, here, the facts alleged do not support a group liability theory, and he has not linked Rodriguez and Jones to any of the alleged adverse actions under the First Amendment.  Consequently, the facts alleged are insufficient to state a cognizable claim against the individual Fresno police officers.  *See Call*, 254 F. Supp. 3d at 1065-66; *see also Jones v. Williams,* 297 F.3d 930, 936-37 (9th Cir. 2002) (rejecting jury instruction that would "hold[] individual officers who were merely present at the search liable" for misconduct); *Rizzo*, 423 U.S. at 371 (there must be allegations indicating an actual connection between actions of an officer and the alleged civil rights violation).

**V.      Leave to Amend**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely

given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Plaintiffs request that if the motions are granted, then further leave to amend be granted. (Doc. 68 at 3, 6.) The Court has insufficient information to conclude that amendment is futile due to the sparsity of allegations in the complaint related to custom, policies, and practices of the City and County. In addition, amendment would allow Plaintiffs to clarify what actions are attributed to the City police officers, and which actions are attributed to the County deputies. Further, it does not appear amendment would cause undue delay at this juncture, and there is no evidence he acted in bad faith. Thus, the request for leave to amend is granted.

## VI.     Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1.     The City Defendants' motions to dismiss and for a more definite statement (Doc. 66) are **GRANTED**.

2.     The County Defendants' motion to dismiss (Doc. 67) is **GRANTED.**

3.     The first and second causes of action are **DISMISSED** with leave to amend; and

///
///
///
///
///
///

4.  Plaintiff **SHALL** file any Fourth Amended Complaint within thirty days of the date of service of this order. If Plaintiff does not file an amended pleading, the Third Amended Complaint shall be deemed the operative pleading with the first cause of action against the County, City, Officer Rodriguez, and officer Jones dismissed, and the second cause of action for retaliation dismissed as to the City Defendants.

IT IS SO ORDERED.

Dated:   **January 21, 2022**

UNITED STATES DISTRICT JUDGE