1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  RICHARD CHARLES BERNIER III and NADEZHDA USTINENKOV, | )  Case No.: 1:18-cv-1131 JLT SKO |
| 12 | )  ORDER GRANTING DEFENDANTS' MOTIONS |
| 13          Plaintiffs, | )  TO DISMISS AND GRANTING THE MOTION TO STRIKE |
| 14          v. | ) |
| 15  FRESNO POLICE OFFICER ANTHONY RODRIGUEZ, et al., | )  (Docs. 81, 82) |
| 16          Defendants. | ) |

17

18          Richard Bernier III and Nadezhda Ustinenkov contend Bernier was the victim of excessive

19  force used by Fresno County deputies and Fresno police officers during the course of an arrest and

20  suffered retaliatory acts for complaining about the actions of the involved officers.  Plaintiffs seek to

21  hold the City of Fresno, Fresno County, police officers, and sheriff deputies liable for violations of

22  federal and state law.  (Doc. 80.)

23          The City and County of Fresno seek dismissal of Bernier's excessive force claim pursuant to

24  Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting the allegations are insufficient to

25  establish *Monell* liability.  (Docs. 81, 82.)  The City, Officer Anthony Rodriguez, and Officer Kevin

26  Jones assert the allegations are also insufficient to state a retaliation claim against the Fresno police

27  officers and seek dismissal of the claim.  (Doc. 81.)  The County Defendants also seek to strike a

28  portion of the Fourth Amended Complaint pursuant to Rule 12(f).  (Doc. 82.)

1    The Court finds the matters suitable for decision without oral arguments, and no hearing date

2    will be set pursuant to Local Rule 230(g).  For the reasons set forth below, the motions to dismiss and

3    the motion to strike are **GRANTED**.

4    **I.     Background and Allegations**

5        Plaintiffs assert Bernier was driving home from a visit with a friend when he "noticed he was

6    being followed by a Fresno County Sheriff's patrol car," either late in the night of November 7 or early

7    morning of November 8, 2017.  (Doc. 80 at 3, ¶ 11.)  According to Plaintiffs, "Bernier was fearful and

8    wanted to get to family before he encountered law enforcement, so he continued to head home."  (*Id.*)

9    Plaintiffs assert "that [a]s the pursuit continued, Bernier was followed by several officers, including

10   defendants Fresno Police Officers Anthony Rodriguez and Kevin Jones, and Fresno County Sheriff's

11   Deputies Garrett Majors, John Robinson, and Nathaniel Wilkinson."  (*Id.* at 3-4, ¶ 11.)

12       Plaintiffs allege that "[a]s he neared his residence, Bernier exited his vehicle and jogged toward

13   his front door."  (Doc. 80 at 4, ¶ 12.)  Plaintiffs assert "one of the pursuing patrol cars drove onto the

14   lawn of an adjacent property after Bernier and ran over his left leg, causing his foot [to] break and [be]

15   pinned under the vehicle."  (*Id.*)  Plaintiffs contend, "There was no justification for this use of force, as

16   Bernier did not appear to be armed and was not by his actions endangering any of the officers or any

17   third party."  (*Id.* at 4, ¶ 12.)

18       According to Plaintiffs, "Bernier was unable to stand up, and he was not a threat to any officer

19   or third party as he writhed in pain on the adjacent lawn."  (Doc. 80 at 4, ¶ 13.)  They contend that

20   while "Bernier was lying on the ground and not resisting, he was surrounded by all of the individual

21   defendants with his arms handcuffed his hands behind his back."  (*Id.*, emphasis omitted.)  Plaintiffs

22   allege, "At that point, no reasonable officer would have believed that the additional use of injurious

23   force on Bernier was lawful."  (*Id.*)  However, Plaintiffs assert "the individual defendants took out their

24   batons and began beating him on his head, face, and body."  (*Id.*, ¶ 14.)

25       "Bernier recalls that some of the officers used their bare fists, others were kicking him, and

26   others were using batons at various times."  (Doc. 80 at 4, ¶ 14.)  Plaintiffs assert:

27           [A]ll of the defendant officers were surrounding him and either personally
             using or enabling other officers to use excessive force, and they therefore
28           all acted as integral participants in this clearly excessive use of force.
             Available redacted body camera footage shows specifically that the two

2

1

2

3

4

5

> officers beating and kicking Bernier were defendants Officers Rodriguez
> and Jones, since they were standing directly over Bernier at the time they
> were using this force and wearing Fresno Police Department uniforms and
> were wearing their body cameras – of the three agencies involved in this
> use of force only officers of the Fresno Police Department were at the time
> equipped with body worn cameras, and records provided in criminal
> discovery indicate that the only two Fresno Police Department Officers
> who responded were Officers Rodriguez and Jones.

6   (*Id.*, emphasis omitted.)  Plaintiffs assert, "Bernier begged the defendant officers to stop and simply

7   arrest him," but they continued to beat him "until he lost consciousness."  (*Id.*)  "The last thing that

8   Bernier remembered before blacking out was being kicked in the head by one or more of the defendant

9   officers."  (*Id.* at 5, ¶ 14.)  Plaintiffs assert "the defendant officers" caused Bernier "to sustain severe

10  head trauma, a broken orbital bond that ultimately required an implant and titanium plate, and

11  numerous contusions and abrasions all over his body."  (*Id.* at 4, ¶ 14.)

12          Plaintiffs report that "Bernier was transported by ambulance to Community Regional Medical

13  Center and was handcuffed to the bed."  (Doc. 80 at 5, ¶ 16.)  Plaintiffs allege "at least some of the

14  defendant officers interfered with his receiving necessary medical treatment, so that he could be

15  rushed to jail."  (*Id.*)  Plaintiffs contend this "interference followed Bernier's protestations and

16  criticisms of the defendant officers' actions, and also was intended to prevent documentation of the

17  full extent of Bernier's injuries."  (*Id.*)  Plaintiffs assert "Bernier was hurriedly released from the

18  hospital" and transported to the Fresno County Jail.  (*Id.*)

19          According to Plaintiffs, "At the jail, Bernier was sent to one of the regular inmate floors

20  instead of the infirmary, which Bernier interpreted as meaning that the officers would permit or

21  encourage inmates to assault him, so that they would then be able to conceal or plausibly deny their

22  wrongdoing."  (Doc. 80 at 5, ¶ 18.)  Plaintiffs assert: "Under state law, applicable jail standards, and

23  applicable jail policy, Bernier should not have been assigned to general population when he clearly

24  required medical attention and monitoring."  (*Id.* at 5-6, ¶ 18.)  Thus, "Bernier believes his being sent

25  to general population was in retaliation for his criticism of the defendant officers and his asking them

26  to identify themselves, and also as part of a cover-up effort."  (*Id.* at 6, ¶ 18.)

27          Bernier was released "[s]everal hours later, after posting bail."  (Doc. 80 at 5, ¶ 16.)  "Upon

28  being released, Bernier returned to Community Regional Medical Center for further treatment of his

injuries." (*Id.* at 6, ¶ 19.)  Plaintiffs report he "was admitted and remained at the hospital for several days due to the severity of his injuries." (*Id.*)

Plaintiffs assert that "at both the hospital and the jail, the defendant officers made numerous sadistic and despicable comments to Bernier." (Doc. 80 at 5, ¶ 17.)  Bernier believes that all of the defendant officers who sued force on him were present in the hospital and participated in this pattern of retaliation and ridicule." (*Id.*, emphasis omitted.)  Plaintiffs allege:

> One of the defendant officers bragged about beating Bernier, saying that he and the others "tuned him up" and also saying "that is what happens when you don't listen to us."  One of the defendant officers also stated that Bernier was "lucky" they did not have a K-9 available.  One of the defendant officers made a comment about Bernier's vehicle having Florida license plates and needing to learn "how things are done in Fresno." Moreover, when Bernier protested and criticized the defendant officers for what they had done to him and also for their comments, and also asked the officers for their names and badge numbers, the officers refused to identify themselves and responded with expletives and comments that he would have to "get a lawyer."

(*Id.*)

Plaintiffs assert in December 2017, "Bernier received a notice that the District Attorney had declined to prosecute him, that a copy of his arrest report had been sent to the Department of Justice, and that his arrest had been retroactively deemed to be a detention." (Doc. 80 at 6, ¶ 20.)  "On December 30, 2017, Bernier, through his retained attorney, sent a preservation request letter to the Fresno County Sheriff's Department, which informed that Bernier would be making a claim based on the events of November 8, 2017…." (*Id.*, ¶ 21.)  On January 8, 2018, the District Attorney filed charges against Bernier.  (*Id.*, ¶ 22.)  Plaintiffs contend this was "[n]ot coincidently… after Bernier gave notice that he was going to take legal action against those responsible for abusing him on November 8, 2017." (*Id.*)  Thus, Plaintiffs allege it was "retaliatory prosecution." (*Id.*)  In addition, Plaintiffs assert "[a]ll of the defendant officers wrote false reports that enabled this retaliatory prosecution to commence, including Officers Jones and Rodriquez.  (*Id.*, emphasis omitted.)

According to Plaintiffs, "Bernier's physical injuries have still not fully healed nearly two years later." (Doc. 64 at 6, ¶ 23.)  For example, Plaintiffs report Bernier "has frequent headaches he never had before" and "is simply not the same mentally or neurologically as he was previously – he has severe memory and concentration issues and related dysfunction." (*Id.* at 6-7, ¶ 23.)  Plaintiffs assert

4

that "Bernier also has also been diagnosed with post-traumatic stress disorder and is plagued with intrusive thoughts and nightmares about the abuse he suffered, as well as the currently pending retaliatory prosecution."  (*Id.* at 7, ¶ 23.)

Nadezhda Ustinenkov, who has been married to Bernier for nine years, alleges she "also has sustained considerable damages as a result of the harm the foregoing incidents have caused in her marital relationship with Bernier."  (Doc. 80, ¶¶ 5, 24.)  Plaintiffs contend, "Instead of being a spouse and equal partner as she used to be, Ustinekov is now more Bernier's caretaker and protector and source of comfort."  (*Id.* at 7, ¶ 24.)  Plaintiffs assert that "Bernier's and Ustinenkov's marital relationship has been damaged even further by the retaliatory prosecution currently pending against them and the related upheaval they now experience."  (*Id.*)

Based upon the foregoing, Bernier identifies the following causes of action in the Fourth Amended Complaint: (1) excessive force in violation of the Fourth and Fourteenth Amendments against the individual/fictious defendants, the City, and the County; (2) retaliation in violation of the First Amendment against all individual and fictitious defendants; (3) violation of the Bane Act against the Fresno County deputies and the County; (4) battery against all County defendants; and (5) negligence against all County defendants. (*See generally* Doc. 80 at 7-13.)  In addition, Ustinekov seeks to hold the County defendants liable for loss of consortium under state law.  (*Id.* at 14.)

The City Defendants—including the City of Fresno, Officer Rodriguez, and Officer Jones— filed their motion to dismiss on March 10, 2022.  (Doc. 81.)  Likewise, the County Defendants— including the County of Fresno, Deputy Major Robinson, and Deputy Major Wilkinson— filed their motion to dismiss and motion to strike on March 10, 2022.  (Doc. 82.)  Plaintiffs filed their opposition to the motions on March 24, 2022.  (Doc. 85.)  The County Defendants filed a reply on April 1, 2022 (Doc. 86) and the City Defendants filed a reply on April 4, 2022 (Doc. 87).

## II.      Motion to Strike

Pursuant to Rule 12(f), a district court "may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A "redundant" matter is comprised "of allegations that constitute a needless repetition of other averments or which are foreign to the issue to be denied." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005).  An immaterial

matter "has no essential or important relationship to the claim for relief or the defenses being pleaded," while an "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07, 711 (1990)).  The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co*., 697 F.2d 880, 885 (9th Cir. 1983).

The County observes: "In the Fourth Amended Complaint on page 13 at line 18, Plaintiffs reference 'Officer Oliver,' however, there is no defendant by the name of Oliver named in this action." (Doc. 82-1 at 14.)  In addition, the County notes that "Plaintiffs acknowledged that this name and reference should not be included in the Notice of Errata Re: Third Amended Complaint for Damages and Injunctive Relief" filed on August 8, 2020.  (*Id.*, citing Doc. 65.)  The County requests the reference to "Officer Oliver" be stricken as it is "misleading, immaterial, and impertinent considering there is no defendant by that name in the case and because Plaintiffs have already indicated that reference was made in error…"  (*Id.*)

Plaintiffs report they "do not oppose the request to strike the erroneous reference to a Deputy Oliver…."  (Doc. 85 at 2.)  Accordingly, the unopposed motion to strike reference to "Officer Oliver" in the Fourth Amended Complaint is granted.

### III.    Motions to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content
> that allows the court to draw the reasonable inference that the defendant is
> liable for the misconduct alleged. The plausibility standard is not akin to a
> "probability requirement," but it asks for more than a sheer possibility that
> a defendant has acted unlawfully. Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

When considering a motion to dismiss, the Court must accept the factual allegations made in

the complaint as true.  *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).  A court

must construe the pleading in the light most favorable to the plaintiffs, and resolve all doubts in favor

of the plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  However, legal conclusions need

not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191,

1200 (9th Cir. 2003).  "The issue is not whether a plaintiff will ultimately prevail, but whether the

claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the

pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416

U.S. 232, 236 (1974).  The Court "will dismiss any claim that, even when construed in the light most

favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student

Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

The City and County of Fresno seek dismissal of Bernier's excessive force claim, asserting the

allegations are insufficient to establish *Monell* liability.  (Docs. 81, 82.)  The City, Officer Anthony

Rodriguez, and Officer Kevin Jones assert the allegations are also insufficient to state a claim for

retaliation against the individual Fresno police officers.  (Doc. 81 at 2.)

### A.    Section 1983 Claims

An individual may bring an action for the deprivation of civil rights pursuant to 42 U.S.C. §

1983 ("Section 1983"), which "is a method for vindicating federal rights elsewhere conferred."

*Albright v. Oliver*, 510 U.S. 266, 271 (1994).  In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any

1         rights, privileges, or immunities secured by the Constitution and laws,
2         shall be liable to the party injured in an action at law, suit in equity, or
       other proper proceeding for redress…

3  42 U.S.C. § 1983.  To state a cognizable claim for a Section 1983 violation, a plaintiff must allege: (1)

4  the deprivation of a constitutional right and (2) a person who committed the alleged violation acted

5  under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670

6  (9th Cir. 1976).

7        A plaintiff must allege a specific injury was suffered and show causal relationship between the

8  defendant's conduct and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  Thus,

9  Section 1983 "requires that there be an actual connection or link between the actions of the defendants

10  and the deprivation alleged to have been suffered by the plaintiff."  *Chavira v. Ruth*, 2012 WL

11  1328636, at *2 (E.D. Cal. Apr. 17, 2012).  A person deprives another of a constitutional right "if he

12  does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he

13  is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v.*

14  *Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  In other words, "[s]ome culpable action or in action must be

15  attributable to defendants."  *See Puckett v. Corcoran Prison - CDCR*, 2012 WL 1292573, at *2 (E.D.

16  Cal. Apr. 13, 2012).

17       **B.**    **Excessive Force**

18        The Supreme Court of the United States determined that the Due Process Clause of the

19  Fourteenth Amendment protects individuals who have not yet been convicted of a crime "from the use

20  of excessive force that amounts to punishment."  *Graham v. Connor*, 490 U.S. 386, 388 (1989).

21  However, allegations of excessive force during an arrest are analyzed under the Fourth Amendment,

22  which prohibits arrests without probable cause or other justification.  *Id.* ("claim[s] that law

23  enforcement officials used excessive force in the course of making an arrest, investigatory stop, or

24  other 'seizure' ... are properly analyzed under the Fourth Amendment's 'objective reasonableness'

25  standard"); *see also Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("the use of force to effect an

26  arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures"). The Supreme

27  Court explained,

28         As in other Fourth Amendment contexts … the "reasonableness" inquiry
       in an excessive force case is an objective one: the question is whether the

8

1

2

> officers' actions are "objectively reasonable" in light of the facts and
> circumstances confronting them, without regard to their underlying intent
> or motivation. An officer's evil intentions will not make a Fourth
> Amendment violation out of an objectively reasonable use of force; nor
> will an officer's good intentions make an objectively unreasonable use of
> force constitutional.

3

4

5   *Graham*, 490 U.S. at 396-97 (1989) (internal citations omitted).  In applying this standard, the Ninth

6   Circuit instructs courts to consider "the totality of the circumstances and . . . whatever specific factors

7   may be appropriate in a particular case." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

8                    1.      Municipal liability

9          The Supreme Court observed that "Congress did not intend municipalities to be held liable

10  unless action pursuant to official municipal policy of some nature caused a constitutional tort."

11  *Monell v. New York City Dep't. of Soc. Services*, 436 U.S. 658, 691 (1978).  Thus, a local government

12  unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of

13  liability. *Id.,* 436 U.S. at 691 ("a municipality cannot be held liable solely because it employs a

14  tortfeasor"). Rather, a local government entity may only be held liable if it inflicts the injury of which

15  a plaintiff complains through a governmental policy or custom.  *Id.* at 694; *Gibson v. County of

16  Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002).

17         To establish municipal liability against the City and County, Plaintiffs must allege Bernier: (1)

18  was deprived of a constitutional right; (2) the City and County each had a policy; (3) these policies

19  amounted to deliberate indifference of his constitutional right; and (4) the policies were "the moving

20  force behind the constitutional violation."  *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)

21  (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *see also Monell*, 436 U.S. at 690-

22  92. There are three methods by which a policy or custom of a government may be demonstrated when:

23
> (1)  A longstanding practice or custom...constitutes the standard
> operating procedure of the local government entity;

24

25
> (2)  The decision-making official was, as a matter of law, a final
> policymaking authority whose edicts or acts may fairly be said to
> represent official policy in the area of decision; or

26

27
> (3)  An official with final policymaking authority either delegated that
> authority to, or ratified the decision of, a subordinate.

28  *Pellum v. Fresno Police Dep't*, 2011 WL 350155, at *3 (E.D. Cal. Feb. 2, 2011) (citing *Menotti v. City

1    *of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)).  Furthermore, a policy may be inferred if there is

2    evidence of repeated constitutional violations for which officers were not reprimanded.  *Menotti*, 409

3    F.3d at 1147.

4        A policy amounts to deliberate indifference where "the need for more or different action is so

5    obvious, and the inadequacy of the current procedure so likely to result in the violation of

6    constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent

7    to the need." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (citing *Oviatt*, 954 F.2d at 1477-78),

8    *accord Canton*, 489 U.S. at 390.  To establish deliberate indifference by a government, "the plaintiff

9    must show that the municipality was on actual or constructive notice that its omission would likely

10    result in a constitutional violation." *Gibson*, 290 F.3d at 1186 (citing *Farmer*, 511 U.S. at 841).

11    Importantly, municipal liability for an "improper custom may not be predicated on isolated or sporadic

12    incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the

13    conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918

14    (9th Cir. 1996).

15        Relevant to his claims of municipal liability, Plaintiffs assert the City and County "are

16    responsible for Bernier's damages because their customs, policies and practices were the moving force

17    behind the individual defendant's constitutional misconduct, since the attendant circumstances

18    indicate there was a pervasive culture of using excessive force and covering it up in these agencies."

19    (Doc. 80 at 8, ¶ 29.)  Specifically, Plaintiffs contend "these entity defendants' customs, policies and

20    practices of failing to train, supervise and discipline officers who use excessive and unreasonable

21    injurious force and also is assisting said officers in concealing their misconduct by denying access to

22    public records and other pertinent information that would assist in exposing office misconduct."  (*Id.*)

23    Plaintiffs allege "[t]hese customs, policies and practices will be further specified during discovery in

24    this proceeding."  (*Id.*)

25                *a.    Failure to train*

26        The Supreme Court held that "the inadequacy of police training may serve as the basis for

27    [Section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of

28    persons with whom the police come into contact." *Canton*, 489 U.S. at 388.  The omission of training

1    must reflect a "deliberate or conscious choice by a municipality" for the City or the County to be liable

2    for its failures under Section 1983.  *Id.*  Therefore, the municipal defendants would be liable under

3    Section 1983 if Bernier can show a failure to train the involved deputes and officers amounted to

4    deliberate indifference, and a causal connection existed between the failure to train and the injuries

5    Bernier claims.  *See Canell v. Lightner*, 143 F.3d 1210, 1213-14 (9th Cir. 1998) (to impose liability on

6    a supervisor for failure to adequately train, a plaintiff must demonstrate that the training was

7    inadequate, the training was the deliberate or conscious choice of the supervisor, and the training

8    caused the alleged constitutional violation).

9          Plaintiffs contend that "[r]easonable officers working for an agency that provided proper

10   training and supervision would have never used grossly excessive force under such circumstances, if

11   only for fear of being reported by another officer or civilian on scene."  (Doc. 80 at 8, ¶ 29(A).)  In

12   addition, Plaintiffs allege officers joked about the use of excessive force while at the hospital and jail,

13   and assert "reasonable officers working for an agency that provided proper training and supervision

14   would have never openly admitted and discussed using grossly excessive force under such

15   circumstances, if only for fear of being reported by another officer or by a healthcare provider who

16   overheard their statements."  (*Id.,* ¶ 29(B).)  Plaintiffs contend that though the officers wore body

17   cameras, the officers knew it "either had to be uploaded to the Fresno Police Department server or

18   would have to be erased in violation of written policy."  (*Id.* at 8-9, ¶ 29(C), (E).)  Plaintiffs conclude:

19              [R]easonable officers working for an agency that provided proper training
            and supervision would not have used grossly excessive force, if only
20          because the existence of body worn footage would have documented
            conduct that could have cost them their jobs and/or subjected them to
21          criminal consequences. Likewise, reasonable officers working for an
            agency that provided proper training and supervision would not have used
22          grossly excessive force, if only because the erasure of available body worn
            camera footage would have been detectable by the agency's supervision
23          and management and thus would have exposed them to severe
            professional or criminal consequences.

24

25   (*Id.* at 9, ¶ 29(E).)

26          The Court determined "these allegations are conclusory in nature" when reviewing the Third

27   Amended Complaint.  (Doc. 78 at 12.)  Plaintiffs have not amended the allegations in the complaint

28   related to the training provided by either the City or the County.  (*Compare* Doc. 64 at 7-9 ¶ 29 *with*

Doc. 80 at 8-10, ¶ 29.)  Instead, Plaintiffs only bolstered the allegations related to the use of body cameras and their requests for camera footage from the City.  (*See* Doc. 80 at 10.)  Again, Plaintiffs do not offer any facts related to the training "defendant officers"[1] received—and may have defied— or facts demonstrating the training failures were the product of deliberate indifference or conscious choice by policymakers for either the City or the County.  Plaintiffs merely re-assert allegations regarding the conduct of the responding officers to attempt to impose liability under a thinly veiled theory of *respondeat superior*.  *See Monell,* 436 U.S. at 691.

Municipal liability has been imposed in "cases in which supervisors have been held liable under a failure to train… theory involve conscious choices made with full knowledge that a problem existed."  *Woodward v. Kokor*, 2017 WL 2572456, at *4 (E.D. Cal. June 13, 2017) (citation omitted); *see also Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (explaining that to impose liability for failure to train, "a plaintiff must usually demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation").  Plaintiffs fail to allege facts supporting a conclusion the City had knowledge of a pattern of violations by its police officers, or that the County had knowledge of a pattern of violations by its deputies, such that the inadequacy of training would be obvious and amount to deliberate indifference by either municipality.

Moreover, to show allege deliberate indifference, it is "ordinarily necessary" to allege "a pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).  In certain cases, however, a showing of "obviousness … can substitute for the pattern of violations ordinarily necessary to establish municipal liability."  *Connick*, 563 U.S. at 63.  This may occur in a situation where "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations," such as arming a police force and failing to train the officers on the use of deadly force.  *Connick*, 563 U.S. at 63; *Canton*, 489 U.S. at 390.  However, there are no facts supporting a conclusion that this case presents the type of "single incident" failure to train claim contemplated by the Supreme Court in

---

[1] It is unclear whether Plaintiff is including the sheriff *deputies* in the allegations, or only referring to the police officers when using this term.  This is particularly problematic because Plaintiffs seek to impose municipal liability upon both the City and the County for the failure to train and supervise.  For purposes of this motion only, the Court will assume the allegations refer to both the sheriff deputies and police officers.

1    *Canton*.  Thus, the facts alleged remain insufficient to establish *Monell* liability for the City and the

2    County on the theory of failure to train employees.

b.    *Failure to supervise*

4           A municipality's failure to supervise its employees can also give rise to Section 1983 liability.

5    *See Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014).  Like the failure to adequately train, a

6    constitutional violation may arise where the failure to supervise amounts to "deliberate indifference."

7    *Canton*, 489 U.S. at 388; *Davis v. Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (observing there is

8    "no principled reason to apply a different standard in adequate supervision" cases than that applied in

9    inadequate training).  "This requires showing that the defendant was on actual or constructive notice

10   that its omission would likely result in a constitutional violation."  *Jackson*, 749 F.3d at 763 (internal

11   quotations and citations omitted).  "Mere negligence in training or supervision … does not give rise to

12   a *Monell* claim."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

13          The County argues that "Plaintiffs have failed to add any factual allegations demonstrating that

14   the County was on notice that any of the Fresno County Deputies had a history or prior incidents of

15   similar bad conduct."  (Doc. 82-1 at 11.)  Similarly, the City contends "[t]here are no allegations

16   contained in the FAC to support the assertion that the Defendant Fresno PD officers work for an

17   agency that does not provide proper supervision. Further, there is no factual support or allegations

18   which plausibly suggest the presence of a pattern of supervisory failures or that the circumstances

19   warrant 'single-incident liability.'"  (Doc. 81-1 at 14.)

20          Plaintiffs' allegations concerning the failure to supervise are entwined with the allegations

21   related to the municipalities' failure to train.  (*See* Doc. 80 at 8-10, ¶ 29.)  As the County and City

22   argue, the allegations remain insufficient to show knowledge— by either municipality—  of a failure

23   to supervise the police officers and sheriff deputies, or that such pattern of a failure to supervise was

24   likely to result in a constitutional violation.  Without such allegations, Bernier fails to establish *Monell*

25   liability on the theory of failure to supervise.  *See Canton*, 489 U.S. at 388; *Jackson*, 749 F.3d at 763.

c.    *Failure to discipline*

27          Plaintiffs allege the City and County are also liable for the "failure to discipline" the officers

28   and deputies who used excessive force.  (Doc. 80 at 8, ¶ 29.)  According to Plaintiffs, "based on

1    discovery in the criminal proceeding … none of the defendant officers were in any way investigated or

2    disciplined, although there is available body worn camera footage of Bernier being handcuffed and

3    prone on the ground and still being kicked in the face and injured by an officer who was seemingly

4    wearing a steel toe shoe or boot." (*Id.* at 10, ¶ 29(G).) Plaintiffs allege, "Although such conduct

5    constitutes assault with a deadly weapon causing great bodily injury and is a serious and violent felony

6    under California Penal Code § 667.5, none of the defendant officers were required to answer for their

7    conduct in any way." (*Id.*) Plaintiffs assert, in essence, the City and County are liable for ratifying the

8    actions of their employees.

9          The Ninth Circuit determined that "evidence of repeated constitutional violations for which the

10   errant municipal officers were not discharged or reprimanded" can be sufficient to support a finding of

11   municipal policy. *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). The practice

12   must, however, be "of sufficient duration, frequency and consistency to constitute an actionable

13   policy." *Trevino*, 99 F.3d at 920. Consequently, a single instance of failure to discipline an officer,

14   without something more, is insufficient to establish ratification. *See Haugen v. Brosseau*, 339 F.3d

15   857, 875 (9th Cir. 2003) (citing *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989)); *see also Kanae*

16   *v. Hodson*, 294 F. Supp. 2d 1179, 1191 (D. Haw. 2003).

17         To state a cognizable claim based upon ratification, a plaintiff must allege an official with final

18   policymaking authority approved a subordinate's action, as well as the basis for the action. *Sheehan v.*

19   *City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other by grounds*

20   *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015); *see also Paulos v. FCH1, LLC*,

21   685 F. App'x 581, 582 (9th Cir. 2017) (relying on *Sheehan* to find a *Monell* claim failed because the

22   plaintiff did not provide sufficient evidence of a pattern of failure to discipline). Stated differently, a

23   final policymaker must make a deliberate choice to endorse the subordinate's actions for the

24   municipality to be liable. *Sheehan*, 743 F.3d at 1231. "The policymaker must have knowledge of the

25   constitutional violation and actually approve of it," and a "mere failure to overrule a subordinate's

26   actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th

27   Cir. 2004). Similarly, the "mere failure to discipline [a subordinate] does not amount to ratification of

28   [the subordinate's] allegedly unconstitutional actions." *Sheehan*, 743 F.3d at 1231.

As the Court previously determined, Plaintiffs have not alleged facts sufficient to support municipal liability based on the failure to discipline or ratification.  Plaintiffs did not add allegations concerning failure to discipline or ratification.  There are no allegations of a pattern of repeated behavior—whether with the identified defendants or other officers and deputies—such that the Court may find a pattern of failure to discipline.  Further, there are no allegations that policymakers for the City and County were involved with the decisions to not discipline the employees.  Thus, Bernier fails to state a cognizable claim against the City and County for excessive force on these grounds.

### d.    Denial of access to public information

Plaintiffs allege the City and County have customs, policies, and practices through which they are assisting "officers who use excessive and unreasonable injurious force… in concealing their misconduct by denying access to public records and other pertinent information that would assist in exposing office misconduct."  (Doc. 80 at 8, ¶ 29.)

This Court observed previously that Plaintiffs "have not cited any case applying *Monell* to such a theory of liability."  (Doc. 63 at 10.)  The closest analogy the Court identified was "the small number of cases discussing the limited circumstances in which a 'cover up' may give rise to § 1983 liability." (*Id.*, citing e.g., *Johnston v. County of Sonoma,* 2011 WL 855934, at *3 (N.D. Cal. Mar. 9, 2011 ["A 'cover up' theory of section 1983 liability is only viable where the cover-up itself deprives a plaintiff of constitutional rights"]; *McNelis v. Ada Cty.*, 2013 WL 12139836, at *3 (D. Idaho Jan. 17, 2013).) Indeed, Plaintiffs assert they believe actions were taken "as part of a cover-up effort."  (Doc. 80 at 6, ¶ 18; *see also id.* at 5, ¶ 15 [alleging "the defendant officers immediately went into 'cover up mode'" after Bernier's injury].)  As the Court explained, "It is possible that a "cover-up" that prevents a person who has been wronged from vindicating his or her rights could violate their right of access to the courts, but a causal connection between the alleged cover up and a constitutional violation would also have to be alleged. (Doc. 63 at 10-11, citing *McNelis*, 2013 WL 12139836, at *3.)

Significantly, however, "[a] valid § 1983 cover-up claim requires that the conspiracy prevented the plaintiff from obtaining redress for the violation that was the subject of the cover-up."  *See Nazarian v. City of Beverly Hills*, 2020 WL 11027732, at *11 (C.D. Cal. Nov. 18, 2020) (citing *Delew v. Wagner*, 143 F.3d 1219, 1222-23 (9th Cir. 1998); *Karim-Panahi v. Los Angeles Police Dep't*, 839

F.2d 621, 625 (9th Cir. 1988).  "In other words, a plaintiff must allege that the cover-up actually precluded the individual from prevailing in a state or federal lawsuit against the wrongdoers."  *Id.* (citing *Delew*, 143 F.3d at 1222-23).  A claim for a cover-up is premature when "the plaintiff's action seeking redress for the underlying violations remains pending."  *Id.* (citing *Karim-Panahi*, 839 F.2d at 625).  Because the action is currently pending in which the underlying violations are challenged, this theory of liability appears premature.  *See Nazarian*, 2020 WL 11027732, at *11; *see also Karim-Panahi*, 839 F.2d at 625 (claim alleging a police cover-up of misconduct was premature when the action challenging misconduct was pending).  Moreover, Plaintiffs fail to link any denial of access to information to a denial of access to the Court.  Thus, Plaintiffs are unable to proceed based upon this theory of municipal liability.

### 2.      Conclusion

Plaintiffs failed to allege facts sufficient to impose municipal liability under *Monell* related to the alleged use of excessive force against Bernier.  Further, to the extent the municipal liability is based upon a "cover up" theory, such a claim cannot proceed at this time. *See Nazarian,* 2020 WL 11027732, at *11; *Karim-Panahi*, 839 F.2d at 625.  Consequently, the motions to dismiss the first cause of action against the City and the County are granted.

### C.      Retaliation under the First Amendment

Bernier seeks to hold "all individual and individual and fictitious Defendant" liable for retaliation in violation of the First Amendment.  (Doc. 80 at 11, emphasis omitted.)  "The First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006), *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).)  It also "protects verbal criticism, challenges, and profanity directed at police officers unless the speech is 'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" *United States v. Poocha*, 259 F.3d 1077, 1080 (9th Cir. 2001) (quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987)).

To state a cognizable claim for retaliation in violation of the First Amendment, Bernier must allege: "(1) he engaged in a constitutionally protected activity; (2) as a result, he was subjected to

adverse action that would chill a person of ordinary firmness from continuing to undertake the activity; and (3) there was a substantial causal relationship between the protected activity and the adverse action." *Id.* (footnote omitted).  Accordingly, a plaintiff "must allege facts ultimately enabling him to 'prove the elements of retaliatory animus as the cause of injury,' with causation being 'understood to be but-for causation.'"  *Lacey v. Maricopa County*, 693 F.3d 896, 916-17 (9th Cir. 2012) (quoting *Hartman*, 547 U.S. at 260).

The City Defendants seek dismissal of the second cause of action, to the extent it is stated against Officers Jones and Rodriguez.  (Doc. 81-1 at 16.)  The City Defendants argue "[t]he additional allegations included in the FAC are insufficient to cure the deficiency of Plaintiffs' allegations with respect to failing to attribute actions to Officers Rodriguez or Jones."  (*Id.* at 17.)  Plaintiffs contend the allegations are sufficient to support the claim and "[t]here is no lack of clarity in these allegations." (Doc. 85 at 4.)

### 1.     Protected activity

In the FAC, Plaintiffs alleges: "The individual defendants, acting under color of law, retaliated against Bernier to deter him from taking appropriate legal action against them, and also for criticizing them and protesting their wrongdoing while he was at the hospital and the jail, and also in the aftermath of his informing the individual defendants that he would be taking legal action."  (Doc. 80 at 77, ¶ 32.). Further, Plaintiffs assert:

> In the aftermath of his beating, at both the hospital and the jail, the defendant officers made numerous sadistic and despicable comments to Bernier. Bernier believes that all of the defendant officers who [used] force on him were present in the hospital and participated in this pattern of retaliation and ridicule. One of the defendant officers bragged about beating Bernier, saying that he and the others "tuned him up" and also saying "that is what happens when you don't listen to us." One of the defendant officers also stated that Bernier was "lucky" they did not have a K-9 available. One of the defendant officers made a comment about Bernier's vehicle having Florida license plates and needing to learn "how things are done in Fresno." Moreover, when Bernier protested and criticized the defendant officers for what they had done to him and also for their comments, and also asked the officers for their names and badge numbers, the officers refused to identify themselves and responded with expletives and comments that he would have to "get a lawyer."

(Doc. 80 at 5, ¶ 17, emphasis omitted.)

17

1    The City does not dispute that the activities identified are protected by the First Amendment.[2]

2    (*See generally* Doc. 81-1 at 16-18; Doc. 87 at 4.)  Indeed, courts have determined that criticizing

3    officers and asking for badge numbers are protected activities under the First Amendment.  *See, e.g.*,

4    *Hill*, 482 U.S. at 461 ("the First Amendment protects a significant amount of verbal criticism and

5    challenge directed at police officers"); *see also Engman v. City of Ont.*, 2011 (C.D. Cal. May 23,

6    2011) (indicating protected activities included "expletive-laced comments and gestures directed

7    toward the officers" as well as "demanding their badge numbers"); *Hadden v, Wathen*, 2018 WL

8    4222882, at *20 (W.D. Kent. Sept. 5, 2018) (finding the plaintiff "engaged in protected activity"

9    when he "asked [the officer] for his badge number"); *Cruthird v. Boston Police Dep't*, 2010 WL

10   4449732, at *6 (D. Mass. Nov. 3, 2010) (holding the plaintiff stated a claim for unlawful retaliation

11   where she alleged that her arrest was in retaliation for exercising her First Amendment rights

12   "because she asked the officers for their badge numbers and protested her innocence").  However, the

13   City argues: "Plaintiffs do not allege that Bernier asked any Fresno Police Officers, Officer Jones, or

14   Officer Rodriguez, for their badge numbers or information or that Officers Rodriguez or Jones

15   specifically made any of the statements alleged or actually participated in the 'pattern of retaliation

16   and ridicule' at the hospital."  (Doc. 81-1 at 17.)

17   As the City observes, Plaintiffs do not allege specifically that Bernier asked Officers Jones or

18   Rodriguez for their badge numbers or allege that Bernier made comments protesting their actions to

19   those specific officers.  Rather, Bernier alleges only that he "believes that all of the defendant officers

20   who [used] force on him were present in the hospital and participated in [a] pattern of retaliation and

21   ridicule."[3]  (Doc. 80 at 5, ¶ 17, emphasis omitted.)  In addition, Bernier alleges he "asked the officers

22   for their names and badge numbers [and] the officers refused," but it is unclear whether these

23   unidentified officers included Rodriguez and Jones or included the County deputies who were present

24   at the time of the alleged use of excessive force.  Nevertheless, *for purposes of this motion only*, the

25   Court will presume that Rodriguez and Jones had knowledge of the comments and criticisms made by

---

[2] Plaintiffs assert: "The City defendants first contend that plaintiffs have failed to allege that Bernier engaged in activity protected by the First Amendment…". (Doc. 85 at 4, ¶ 5.)  However, this argument is not raised by the defendants.

Bernier at the hospital, given the allegation that "all defendant officers who [used] force on him"—

including Rodriguez and Jones "were present in the hospital."

### 2.    Adverse actions

Plaintiffs allege "[t]he individual defendants, acting under color of law, retaliated against

Bernier" by taking the following actions:

> (1) denying Bernier timely and necessary medical care, both at the hospital and the jail, on November 8, 2017, in the immediate aftermath of his criticism and complaint about the individual defendants' misconduct and also in an effort to prevent, deter and intimidate him from taking legal action; (2) assigning Bernier to general population on November 8, 2017, despite his injures, in the immediate aftermath of his criticism and complaint about the individual defendants' misconduct and also in an effort to prevent, deter and intimidate him from taking legal action; and (3) recommending the filing of criminal charges against Bernier after he made it known that he was going to take legal action, even though it had previously been decided that no charges would be filed against him.

(Doc. 80 at 11, ¶ 32.)

The City Defendants do not argue these were not adverse actions under the First Amendment.

(*See* Doc. 81-1 at 17-18.)  However, the defendants argue the allegations are insufficient against the

individual officers because "[i]t remains true that Plaintiffs have failed to allege that Officers Jones

and Rodriguez actually interfered with medical treatment or were in any way involved in Bernier's

transport to Fresno County Jail."  (*Id.* at 15.)

On the other hand, Plaintiffs maintain the allegations are sufficient against the officers.  (Doc.

85 at 4.)  According to Plaintiffs, the City Defendants "ignore[] plaintiffs' contention that all of the

named defendants participated in this pattern of retaliation…."[4]  (*Id.*)  Plaintiffs argue: "There is no

lack of clarity in these allegations, and while discovery may show that only some subset of defendants

participated, Bernier … is not required, particularly without conducting any discovery, to specify the

precise roles of defendants he alleges engaged in joint activity."  (*Id.* at 4, citing *Rutherford v. City of

Berkeley*, 780 F.2d 1444, 1448 (9th Cir. 1986); *Call v. Badgley*, 254 F.Supp.3d 1051, 1066 (N.D. Cal.

2017).)

---

[4] The assertion that officers were engaged in a "pattern of retaliation" is a legal conclusion cast as a factual allegation, and is not entitled to the assumption of truth.  *See Iqbal*, 556 U.S. at 679; *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'").

1               *a.*     *Group liability theory*

2       In *Rutherford*, the plaintiff called the police from a hotel to report his friend was assaulted by

3 the hotel manager, and then waited across the street from the hotel for the police to arrive. *Id.*, 780

4 F.2d at 1445.  Rutherford asserted that several officers responded to the hotel, at which time two

5 officers entered and "five or six other Berkeley officers," including the named defendants: officers

6 Hood, McBride and Houpt, approached Rutherford,.  *Id.* Rutherford alleged that "without any

7 provocation and without placing him under arrest, the officers detaining him threw him to the ground,

8 punched, kicked, and handcuffed him."  *Id.*  Reviewing the appeal of summary adjudication in favor of

9 the officers, the Court observed: "While Rutherford could not specifically state whether defendants

10 Officers Houpt, McBride or Hood punched or kicked him, he did testify that they were among the five

11 or six officers who were surrounding him while he was being beaten and that he saw each of their

12 faces while he was being beaten."  *Id.* at 1448.  In addition, the Court noted the "three officers agreed

13 that they were among the five or six officers who detained, arrested and handcuffed Rutherford, but

14 denied punching or kicking Rutherford."  *Id.*  Thus, the Court found summary judgment should not

15 have been granted, because "a jury could reasonably infer that the named officers were participants in

16 punching or kicking Rutherford."  *Id.*

17       Bernier previously alleged only that he was followed by County sheriff deputies and City police

18 officers, which included Rodriguez and Jones.  (*See* Doc. 64 at 3, ¶ 11.)  However, Bernier now asserts

19 that "body camera footage shows specifically that the two officers beating and kicking Bernier were

20 defendants Officers Rodriguez and Jones."  (Doc. 80 at 4, ¶ 14, emphasis omitted.)  On the other hand,

21 Bernier does not allege Rodriguez and Jones were involved in his transport to the Fresno County Jail—

22 a facility run by the County, rather than the City— or booking at the facility to have Bernier placed in

23 the general population.  Rather, Bernier asserts that he "believes that at least *some* of the defendant

24 officers interfered with his receiving necessary medical treatment, so that he could be rushed to jail."

25 (*Id.* at 5, ¶ 16, emphasis added.)  Unlike the facts before the Court in *Rutherford*, Bernier has not

26 alleged facts sufficient to support a conclusion that Officers Rodriguez and Jones were involved in the

27 transport that allegedly interfered with medical treatment or were involved with placing Bernier in the

28 general population.  Toward this end, Plaintiffs' reliance upon *Rutherford* is misplaced.

The allegations in the FAC remain akin to *Call*—also cited by Plaintiffs— where the Northern District indicated a plaintiff must do more than simply place an officer at the scene of an alleged constitutional violation.  *Id.*, 254 F. Supp. 3d at 1065-66.  In *Call*, the plaintiff asserted constitutional violations by officers who executed a search warrant in his home.  *Id.* at 1055, 1065-66.  The court found Call failed to present evidence "about which of the several officers may be responsible" for the alleged violation, and instead "offer[ed] nothing more than their mere presence at his residence."  *Id.* at 1065.  The court explained Call "cannot sustain a group liability theory" because "[a]n officer's liability under section 1983 is predicated on his 'integral participation' in the alleged violation.'"  *Id.* (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007)).  Likewise, here, the facts alleged do not support a group liability theory simply based on the presence of Rodriguez and Jones at the hospital.

### b.   *Retaliatory prosecution*

Finally, Plaintiffs also assert the defendants are liable for "retaliatory prosecution" under the First Amendment due to the "recommending of filing of criminal charges." (Doc. 80 at 6, ¶ 22; *id*. at 11, ¶ 32.)  The City Defendants argue Bernier is unable to state a claim for retaliatory prosecution, because "a plaintiff's retaliatory prosecution claim requires the plaintiff to plead and prove the absence of probable cause for the criminal charge in order to sustain the cause of action." (Doc. 81-1 at 17, citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006).)  Plaintiffs assert, "The decision relied upon by the defendants, *Hartman v. Moore*, 547 U.S.250 (2006), only requires a finding of no probable cause for malicious prosecution claims." (Doc. 85 at 5.)  According to Plaintiffs, he was not required to plead a lack of probable cause because the FAC "does not allege Bernier was maliciously prosecuted as part of his retaliation, but instead that the defendants – after originally deeming his arrest a detention only – recommended the filing of criminal charges once he made it known he was going to sue them." (*Id*, emphasis omitted.)

Contrary to Plaintiffs' assertion, "[w]hen a plaintiff claims he was prosecuted in retaliation for an exercise of a First Amendment right, the plaintiff must plead and prove that the defendant lacked probable cause." *Tranquilla v. City & County of San Francisco*, 2014 WL 554536, at *7 (N.D. Cal. Feb. 7, 2014), citing *Hartman*, 547 U.S. at 265-66 (2006); *see also Lozman v. City of Riviera Beach,*

1   *Fla.*, 138 S. Ct. 1945, 1952-53 (2018) ("If there was probable cause, the case ends"); *Cairns v. County*

2   *of El Dorado*, 2015 WL 9319248, at *4 (E.D. Cal. Dec. 22, 2015) ("To state a claim for retaliation—

3   whether based on a retaliatory arrest or a retaliatory prosecution—a plaintiff must allege and prove the

4   absence of probable cause").  Put another way, to succeed on a claim for retaliatory prosecution, "[a]

5   plaintiff must show not only that the defendant official harbored retaliatory animus and thus sought to

6   induce prosecution, but also that the official succeeded—that is, that the 'prosecutor [] would not have

7   pressed charges otherwise.'"  *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1234 (9th Cir. 2006)

8   (internal citations omitted).

9        In the FAC, Plaintiffs do not provide any information regarding the charges made by the

10   District Attorney.  (*See* Doc. 80 at 7.)  According to the Fresno County Superior Court, the charges

11   against Bernier included: (1) fleeing a peace officer, reckless driving; (2) hit and run property damage;

12   (3) resisting a public or peace officer; (4) driving under the influence while white blood alcohol level

13   was 0.08% or more; and (5) driving under the influence of alcohol.[5]  Nevertheless, it is undisputed that

14   Bernier does not allege the absence of probable cause for each of the charges filed by the District

15   Attorney in the operative complaint.  Consequently, Bernier fails to state a cognizable claim for

16   retaliatory prosecution in violation of the First Amendment against Officers Rodriguez and Jones.

17   **IV.      Request for Leave to Amend**

18        Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely

19   given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

20   decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122,

21   1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted).  When dismissing a

22

23   [5] The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known
24   within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy
     cannot reasonably be questioned." Fed. R. Evid. 201; *see also United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir.
25   1993). The official records of the Superior Court of Fresno County, as contained in the court's official website, are sources
     whose accuracy cannot reasonably be questioned, and judicial notice may be taken of information on the website of a state
26   court. *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (judicial notice may be taken of "undisputed
     matters of public record, including documents on file in federal or state courts"); *O'Toole v. Northrop Grumman Corp.*,
27   499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found
     on the world wide web"). Accordingly, the Court takes judicial notice of the Fresno County Superior Court docket in Case
28   No. F18900078, including the filing dates and documents publicly available. This docket is available at https://www.sb-
     court.org, and through the court's online portal at https://publicportal.fresno.courts.ca.gov/FRESNOPORTAL/.

complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Plaintiffs request that if the motions to dismiss are granted, then further leave to amend also be granted.  (Doc. 85 at 6.)  However, Plaintiffs repeatedly amended the allegations filed in this action, and the operative pleading is the *Fourth* Amended Complaint.  Plaintiffs failed to cure the identified deficiencies related to the *Monell* claims and did not allege additional facts sufficient to support the claim.  Similarly, Plaintiffs did not allege facts to support Bernier's claim for retaliation under the First Amendment against Officers Rodriguez and Jones, despite his prior leave to amend.  Therefore, the Court finds further leave to amend would be futile.  *See, e.g., Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009) ("repeated failure to cure deficiencies" constitutes "a strong indication that the [plaintiff] has no additional facts to plead" and "that any attempt to amend would be futile").  Therefore, the request for leave to amend is denied.

**V.      Conclusion and Order**

For the reasons set forth above, the Court **ORDERS**:

1.      The City Defendants' motions to dismiss (Doc. 81) is **GRANTED**.

2.      The County Defendants' motion to dismiss and motion to strike (Doc. 82) are **GRANTED**.

3.      The first cause of action for excessive force, to the extent it is stated against against the City of Fresno and the County of Fresno, is **DISMISSED**.

4.      The second cause of action for retaliation in violation of the First Amendment, to the extent it is stated against Officers Rodriguez and Jones, is **DISMISSED**.

5.      Reference to "Officer Oliver" in the Fourth Amended Complaint is **STRICKEN**.

6.      Plaintiffs' request for further leave to amend is **DENIED**.

7.      The action **SHALL** proceed with the Fourth Amended Complaint as the operative

pleading in the matter, with the above portions dismissed and stricken.

8.    Defendants **SHALL** file their answers to the Fourth Amended Complaint within thirty days of the date of service of this Order.

IT IS SO ORDERED.

Dated:    **November 8, 2022**



UNITED STATES DISTRICT JUDGE